**Bertha M. Parkin, Administratrix, Appellee, v. Chicago, Peoria & St. Louis Railroad Company, Appellant.**

1. EVIDENCE—*effect given to negative.* The testimony of witnesses who were occupied with their work to the effect that at such time a locomotive bell was not rung, is entitled to little weight as against positive evidence to the effect that such bell was rung.

2. EVIDENCE—*when habits of care competent.* There being no eye-witness to the accident as an entirety, evidence of the careful habits of the plaintiff's intestate is competent upon the question of the exercise of ordinary care.

3. EVIDENCE—*effect of proof of habits of care.* The presumption of care which arises from proof of habits of care is not conclusive.

4. CONTRIBUTORY NEGLIGENCE—*when driving upon railway constitutes.* Held, under the evidence in this case that the plaintiff's intestate in driving upon the railroad crossing in question under the circumstances shown to exist, was guilty of contributory negligence which barred a recovery.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed May 19, 1909.

BELLATTI & BARNES, for appellant; WILSON, WARREN & CHILD, of counsel.

LAYMAN & MORRISEY, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee against appellant to recover damages for wrongfully causing the death of appellee's intestate, William T. Parkin. The negligence alleged in the declaration is the failure of appellant to sound a whistle or ring a bell upon its locomotive while approaching the crossing of a public highway, as required by statute. A trial by jury in the

Circuit Court of Morgan county resulted in a verdict
and judgment against appellant for $4,500.

At about 5 o'clock P. M., on November 14, 1905, the
deceased left Loami with a horse and buggy to go to
his home at Waverly and arrived at the crossing where
he was killed, a distance of about eight miles from
Loami, about 6 o'clock P. M.  The railroad track of
appellant runs in a northeasterly and southwesterly
direction and the highway upon which the deceased
was driving west, runs east and west.  Extending for
a distance of about 600 feet on the east side of appel-
lant's right of way and north of the crossing there was
an embankment from seven to nine feet in height upon
which there was a growth of weeds and grass about
two feet in height, and at a point about 1,000 feet north
of said crossing appellant had a railroad bridge about
125 feet in length, and still further north was located
the whistling post where crossing signals were cus-
tomarily commenced to be given as the train ap-
proached the crossing in question from the northeast.
East of appellant's right of way and north of the high-
way there was a field of standing corn about eight
feet in height.  At a point on the east and west high-
way about one-fourth of a mile east of the railroad
crossing there is a wagon bridge over a creek.  Pro-
ceeding west from the bridge on said highway toward
the railroad crossing the road rises to an elevation
from which a person riding in a buggy has an unob-
structed view of a train running southwest upon appel-
lant's track for a distance of a mile to a mile and a
half north of the point where such track crosses the
highway, and such view is not obstructed until at a
point about fifty feet east of the railroad track where the
highway gradually inclines to said railroad track.  The
train which struck the deceased at the crossing was
going southwest and consisted of a locomotive and two
passenger coaches.  The evening was dark and cloudy
and the lamp in the locomotive headlight and the lamps
in the passenger coaches were lighted.  It is estab-
lished by the evidence that the deceased was familiar

with the highway and with the railroad crossing, and that he must have been driving at a speed of about eight miles an hour. All of the witnesses testified that as the train approached the crossing from the northeast the usual preliminary crossing signal, consisting of two long and two short blasts of the whistle, was sounded at or near the whistling post north of the crossing, and that shortly thereafter and before the crossing was reached, two long and two short blasts of the whistle were again sounded. The evidence tends to show that the train was then running at a speed of from thirty to thirty-five miles an hour.

William R. Turnbull, a witness called on behalf of appellee, testified that as the train approached the crossing he was milking cows in his barn about sixty rods north of the track; that he heard the rumbling of the train and heard the whistles sounded as heretofore stated; that the wind was blowing hard from the south and west and that he did not hear any bell ring.

Fred Wright and Walter Deatherage, witnesses called on behalf of appellee, testified that they were driving south upon a road about 100 yards west of appellant's right of way when they heard the train whistle as before mentioned, and that they heard no bell ring; that they were riding in a heavy two-horse wagon equipped with oil and gasoline tanks and buckets in an iron box; that as they drove along they were engaged in conversation.

Edward Nolan, the locomotive engineer, A. B. Ross, the fireman, C. A. Coleman, the brakeman, and George M. Porter, the conductor, were called as witnesses on behalf of appellant.

Nolan testified that immediately after he sounded the first two long and two short blasts of the whistle he pulled the bell rope and that the bell then rung continuously until the crossing was reached; that as he approached the crossing he saw what he supposed to be two horses running away; that he did not notice the train strike anything; that the locomotive was

running backwards with the tender in front and the
headlight on the tender, and that the headlight was
twelve feet above the rail.

Ross testified that when the engineer first sounded
the whistle he got down to fire the engine and that
he heard the bell ring; that as he was busy firing he
heard nothing more until he heard the air brakes ap-
plied.

Coleman testified that he was sitting in the rear
car of the train at an open window; that he heard
the bell ring from the time the whistle was first
sounded until it was sounded the second time; that
almost simultaneously with the second sounding of the
whistle the air brake was applied.

Porter testified that he heard the bell ring after the
whistle was first sounded until the train went on to the
bridge, when he was unable to hear it by reason of the
rumble of the train on the bridge, and that he heard it
again just as soon as the train passed over the bridge.

Upon the question as to whether or not the bell was
rung during the interval when the whistle was not
sounding, the evidence of the witnesses called on be-
half of appellee is negative in its character and enti-
tled to comparatively little weight in view of the fact
that they were preoccupied with work and conversa-
tion having no relation to the subject-matter of the
inquiry, and the further fact that the strong wind then
blowing from the south would have a tendency to carry
the sound of the bell, if it was ringing, in an opposite
direction from the position which they occupied. But
waiving a consideration of the weight of the evidence
bearing upon that question, it was incumbent upon
appellee to show not only that appellant was negligent
as alleged but that the deceased was in the exercise
of due care and caution for his own safety when he
approached the crossing, and that the alleged negli-
gence of appellant was the proximate cause of his
death. The deceased was familiar with the road on
which he was traveling and with the railroad cross-

ing over which he was required to pass, and being a man of mature years and unimpaired faculties he must be held to have known that such railroad crossing was a place of danger. Upon a careful consideration of the evidence bearing upon the location of the public highway with reference to the track of appellant, and the opportunity which was thus afforded the deceased from his position on such highway to observe the approach of a train with the lamp in the headlight of the locomotive lighted and the passenger coaches illuminated, it is incomprehensible that he should, while in the exercise of due care for his own safety, have driven upon the crossing directly in front of such train. That in his haste to reach his home in Waverly, as the evidence tends to show, he misjudged the proximity of the approaching train to the highway and took the chance of crossing appellant's track before the train reached the highway, or that absorbed in his own meditations he drove upon the crossing without exercising any precaution to observe whether or not a train was approaching, are much more reasonable solutions of the problem. Upon the issues of proximate cause and the contributory negligence, if any, of the deceased, we are impelled to the conclusion that the verdict of the jury is against the manifest weight of the evidence.

The court did not err in overruling the motion made by appellant to strike from the record the evidence of witnesses who testified on behalf of appellee to the effect that the deceased was a man of careful habits. The motion was predicated upon the ground that Nolan, the engineer, was an eye witness of the accident. Nolan did not see the deceased, or the conveyance in which he was riding, or the accident which resulted in his death. As before stated, he merely testified that as he approached the crossing he saw what he supposed to be two horses running away. In this state of the proof evidence as to the habits of the deceased regarding care and caution for his own safety was proper to be considered by the jury. C. & A. Ry. Co. v. Wilson, 225 Ill. 50.

The eighth instruction given at the instance of appellee is as follows:

"The court further instructs the jury that if you believe from all the facts and circumstances in evidence in this case that there is no direct testimony showing that the deceased was not using due care and diligence for his personal safety at the time he was alleged to have been killed, and if you further believe from all the evidence that the deceased was in possession of all the ordinary and mental faculties of an ordinary person, and that he was a man that used due care and diligence for his personal safety in traveling upon the highways or crossing railroads or other places of danger, then the jury may find by their verdict that the said William T. Parkin, deceased, was at the time he is alleged to have been killed in the exercise of due care and diligence for his personal safety."

No witness in the case gave direct testimony as to the conduct of the deceased tending to show that he was not exercising due care and diligence for his personal safety at the time he was killed, but the absence of such testimony did not operate to make the presumption arising from proof as to his habits regarding care and caution and from the natural instincts of self-preservation conclusive. The instruction was calculated to mislead the jury by excluding from their consideration facts and circumstances disclosed by the evidence relating to the manner in which the train was operated and the ability of the deceased to observe the train as he was driving upon the highway, which was not in the nature of direct testimony as to his conduct regarding due care for his own safety.

Objection is made to the instructions given on behalf of appellee regarding the duty of appellant to ring a bell or sound a whistle as required by the statute. Taking all of the instructions upon that subject together the jury were correctly advised as to the statutory duty of appellant in that regard.

The 16th and 18th instructions relating to the as-

sessment of damages given at the instance of appellee are inaccurate in failing to confine the jury to the evidence.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*