## Illinois Central Railroad Company v. Lewis H. Warriner, Administrator.

### Gen. No. 4,775.

1. Ordinance—*when proof of, sufficient.* An ordinance is sufficiently proven when contained in a pamphlet which purports to be published by authority of the municipality. It is not necessary that such purported authority show upon the title page; it is sufficient if it appears at any part of the pamphlet.

2. Imputed negligence—*when doctrine of, applies.* The doctrine of imputed negligence applies in an action brought to recover for the death of an infant child whose contributory negligence would be no defense to the action.

3. Instruction—*propriety of phrase "if you find from the evidence."* The use of the phrase "if you find from the evidence" is equivalent to the employment of "if you find from the preponderance of the evidence" and is free from ground of complaint.

4. Instruction—*when estoppel to complain of, arises.* A party cannot complain of the vice of an instruction when he has caused other instructions to be given which contain a like vice.

5. Measure of damages—*when instruction as to, not erroneous.* An instruction upon the measure of damages is not erroneous which contains a direction to the jury that they may take into consideration the facts proven "in connection with your own knowledge and experience."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Kankakee county; the Hon. Frank L. Hooper, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907.

W. R. Hunter, for appellant.

H. K. & H. H. Wheeler, for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

On November 3, 1904, a little boy about one year and eight months old, was struck by the engine of a south-bound passenger train of the Illinois Central Railroad at the crossing of Wilson street in the Village of Peotone, and died from the injuries then received.

His administrator brought this suit to recover damages for the benefit of the next of kin. By the action of the plaintiff and by the rulings of the court before the case went to the jury, the declaration was reduced to the second and fifth counts, each of which charged that the railroad company ran the train at a speed which violated an ordinance of the village restricting the speed of trains within the corporate limits to ten miles per hour, and that said child was struck and killed by reason of such unlawful speed of the train. The general issue was pleaded, and upon a trial the administrator had a verdict and a judgment for $2,500 from which the railroad company appeals. Appellant contends that the court erred in admitting in evidence the ordinance; that the proof did not warrant a verdict that the parents of the child were in the exercise of due care for its safety, and for that reason did not warrant a verdict for appellee; and that the court erred in giving the first, second and third instructions requested by appellee.

Section 4 of article 5 of the general act for the incorporation of cities and villages provides that when ordinances are printed in book or pamphlet form, purporting to be published by authority of the board of trustees or the city council, they need not be otherwise published; and such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances, as of the dates mentioned in such book or pamphlet, without further proof. Appellee offered in evidence, from a printed pamphlet, a torn title page, the first page, the last page, and section 1 of ordinance 12 therein. The torn title page revealed nothing except that it related to some village in Will county, Illinois. The first page, which was also a title page, contained these words in large letters: "Revised Ordinances of the Village of Peotone, Illinois." The last page was a printed copy of a certificate by the president of the board of trustees and by the clerk of the village of Peotone, purporting to certify "that

the foregoing are true and authentic copies of the ordinances of the village of Peotone, denominated 'the Revised Ordinances of the Village of Peotone, Will county, Illinois,' deposited in the office of the clerk of said village, and that the same were duly arranged, printed and published by the authority of the president and board of trustees of said village, and that the foregoing ordinances were respectively duly passed and approved on the 19th day of August, A. D. 1890.'' Beneath this was an attestation clause purporting to have affixed thereto the corporate seal of said village, and dated August 20, 1890, and signed by the village clerk, underneath which were the words ''approved August 20, 1890,'' signed by the president, both signatures and the seal being printed. ' The parts so offered were admitted over the objection of appellant. After appellee had closed his proofs appellant introduced in evidence the last paragraph of said ordinance No. 12, which contained the certificate of the village clerk that said ordinance was passed August 19, underneath which was the approval by. the president dated August 20, 1890. Appellant then moved to exclude section 1 of said ordinance No. 12. This was denied and appellant excepted. The usual manner of showing that such a pamphlet or book is published by authority of the village board or city council is by a statement to that effect on the title page; and words on such title page alleging that the pamphlet or book is published by such authority fills the measure of proof required by the statute above cited, and also of a like enactment as to the manner of proving statutes of other states. Eagan v. Connelly, 107 Ill. 458; McCraney v. Glos, 222 Ill. 628; C. & A. R. R. Co. v. Wilson, 225 Ill. 50. Must such publication by authority be shown on the title page? The pamphlet offered in Village of Wapella v. Davis, 39 Ill. App. 592, did not contain that statement on the title page, but such publication by authority appeared from a section of the ordinances when considered in connection with the

printed certificate of the clerk at the end. It was held that it was sufficient if it appeared from any part of the pamphlet that it purported to be published by the proper authority. In McGregor v. Village of Lovington, 48 Ill. App. 202, the proof that the pamphlet of ordinances there introduced was published by authority of the village trustees was contained in the printed certificate of the clerk. It was there said: "It is sufficient if the book, on its title page or by printed certificate of the clerk, or otherwise on its face, purports to have been published by the authority of the trustees." We think these decisions rest upon sound principles. It follows that appellee made all the proof the statute requires to admit said section 1 of ordinance No. 12 in evidence. The proof above mentioned, introduced by appellant, showed that while the clerk's printed certificate recited that said ordinances were passed and approved August 19, 1890, the statement at the foot of said ordinance No. 12 said it was passed August 19, but approved August 20, 1890. This did not destroy this pamphlet as competent evidence of the passage, approval and legal publication of this ordinance. As said in C. & A. R. R. Co. v. Wilson, *supra,* it "did not disprove the passage of the ordinance, but, at most, merely tended to show that the records of the Village board were incorrectly or carelessly kept.'" It is entirely immaterial to the rights of the parties here whether that ordinance was approved August 19 or August 20, 1890. The court did not err in admitting the ordinance and in refusing to exclude it.

The ordinance restricted appellant to a speed of ten miles per hour. Appellee's witnesses showed that the train in question was running at a speed of from twenty to forty miles per hour. Appellant's witnesses, the train men, fixed it at from nine to twelve miles per hour. Appellee outnumbered appellant in witnesses upon this subject, and no witness for appellant would testify that the speed did not exceed ten miles per hour, except that the engineer thought that at the time

the engine struck the child (which he had seen when some distance away) he had reduced the speed below ten miles per hour. There was an automatic crossing bell east of the tracks on the north side of Wilson street. It was operated by electricity, and its circuit extended over one hundred and thirteen rods to the north, and the bell must begin to ring when the head of the south-bound train was that far north of Wilson street, but within the village limits. When the mother and Maud, a daughter, in the house, heard that bell ring, the mother exclaimed ''Where is the baby,'' and they looked in the sitting room and then went into the back yard and then ran to the front, and the mother was next behind Mabel, another daughter, running towards the train when the child was struck. The father was east of that track and a short distance north of Wilson street on his way home when he saw the child, and he dropped what he had in his hands and started on the run for the crossing but the train reached the crossing before him. The end or corner of the pilot-beam struck the child on his head and knocked him into the ditch west of the track. The engineer had seen the child coming from the west toward the track and slackened the speed of the train, and then had concluded the child was not coming on, and had thrown off the brake, and seeing the child start toward the track he again applied the brake. Appellee's proof was that the rear of the train was about sixty or eighty feet south of the crossing when it stopped, while appellant's proof put the distance at twenty or thirty feet. Three members of the family had almost reached the east side of that track when the engine went by. The jury were warranted in concluding that the speed of the train was much in excess of that permitted by the ordinance, and that if, from the time the electric bell at Wilson street began to ring when the engine was more than one hundred and thirteen rods distant and then within the village limits, the train had been run at not

exceeding ten miles per hour, the child would easily have been rescued.

The second and fifth counts did not aver that the parents of deceased were in the exercise of due care for his safety. Instructions given at appellant's request made it essential to a recovery by appellee that such care by said parents before and at the time of the injury should be established by a preponderance of the evidence. If the declaration should have contained such an averment, the defect was cured by verdict. City of East Dubuque v. Burhyte, 173 Ill. 553; Sargent Co. v. Baublis, 215 Ill. 428. The important question in this case is whether the proof warranted the conclusion of the jury that the parents did exercise due care for this infant. Appellee was the father. He had been a railway postal clerk for many years. He lived with his family on the south side of Wilson avenue, on the lot next to the right-of-way of the railroad. His house stood about twenty feet from the right-of-way and about ten or twelve feet back from Wilson street. There was a board fence between his lot and the right-of-way, but no fence in front of his lot. The family consisted of the father and mother and six children living at home, besides three other children living elsewhere. The house work was done by Mrs. Warriner and the two oldest daughters, Maud and Mabel. That morning they were engaged in doing a two weeks' washing. These three women and the little boy were about the house and yard. One witness said that Ruth, five years old, was at home, and another that she was not. Warriner went north to the post office to get his mail, and did some trading at a store and was on his way home. Mrs. Warriner put on the little boy's coat and saw him starting down the steps from the back porch on the west side of the kitchen to go to the back or side yard to play. Mrs. Warriner estimated that this was about fifteen or twenty minutes before the accident. Maud testified that she saw the child near the steps of the back porch about nine or ten minutes

before the accident. She had been out in the yard with a basket of clothes, and saw him there, and went in to fix more clothes, and was starting out of the door again when she heard the automatic crossing bell ring, and she ran out into the yard to look for the child, and then to the front to look towards the railroad to see if the child was in that direction, and saw him just west of the track and ran towards him, but the train reached and struck him before she got there. Mabel was washing clothes in the kitchen. She had last seen the child in the back parlor, which she estimated was fifteen or twenty minutes before the accident. The mother had no help at the house work, except her two grown daughters. The child was allowed to go into the back yard. One of his sisters was just going to the clothes line when he went out, and while her testimony is a little confused we think she meant that she hung out one basket of clothes and that her little brother was about the porch steps during that time, and that she then went to get another basket of clothes and saw her brother out there as she went in, and that she spent six or eight minutes in the house preparing another basket of clothes and was just coming out of the door with it when she heard the electric gong, which showed the women that there was a train coming one hundred and thirteen rods distant, and they then began to look for the child, and not finding him ran at once to the street and saw and tried to rescue him. It is true that many trains each day went over this crossing near where these people lived; but it is also true that an alarm had been provided which gave considerable time for search for the child before the train reached the crossing, if it was run within the limit fixed by the ordinance.

As already suggested, although the child was so young that no negligence can be imputed to it, yet as the suit is brought by the personal representative, if the parents were negligent, and if that negligence contributed to the injury, such negligence would bar a re-

covery. Chicago City Ry. Co. v. Wilcox, 138 Ill. 370; C. & A. R. R. Co. v. Logue, 158 Ill. 621. The question whether the conduct of parents of a young child was or was not negligence has been discussed in City of Chicago v. Major, 18 Ill. 349; P., F. W. & C. Ry. Co. v. Bumstead, 48 Ill. 221; C. & A. R. R. Co. v. Gregory, 58 Ill. 226; City of Chicago v. Hesing, 83 Ill. 204; T., W. & W. Ry. Co. v. Grable, 88 Ill. 441; Gavin v. City of Chicago, 97 Ill. 66; Stafford v. Rubens, 115 Ill. 196, and C. & A. R. R. Co. v. Logue, *supra.* In the Major case, *supra,* the court said that a large majority of children living in cities depend upon the daily labor of both parents for subsistence, and these parents are unable to employ nurses, who may keep a constant and vigilant eye upon their children, and that it must be left to a jury to determine whether the parents of the child have been guilty of negligence in suffering the child to be in the streets. In the Gregory case, *supra,* the court said: "The same rule should not be applied to persons depending upon their labor for support, and to those whose means enable the mother of the family to give a constant personal attention to children, or to employ a nurse for that purpose." The Hesing case, *supra,* has since been frequently referred to with approval. There a boy four years old was drowned in a ditch in the street immediately in front of the house, while his mother was engaged at ordinary labor in the house. The court said: "The child was too young to observe any care for its personal safety, and its parents omitted no reasonable care for its protection. The parents of the child are laboring people, and had to be constantly employed. When the accident occurred the father was at work in a lumber yard not far distant, and the mother was engaged in her usual domestic affairs. The law has not required that persons in their station in life shall keep a constant watch over their children, nor can the want of such care be imputed to them as negligent conduct." In the Logue case, after quoting as above

from the Hesing case, the court said: "By the application of this principle, which is sustained by other cases in this court, it could not be said as a question of law, that under the facts shown in this record the parents were guilty of contributory negligence. The question was one of fact for the jury. The former decisions of this court are conclusive on this branch of the case." Under the authorities above cited we do not feel warranted in disturbing the verdict on that subject.

The first instruction given for appellee was not quite accurate as to the age of the child, but we regard the slight variance as immaterial. It is argued that it confined the duty of the parents to exercise due care for the child to a time when it was near the track. On the contrary, the time referred to in that part of the instruction is the time next previously mentioned, which was "on the date of said accident." If there was any vagueness in that respect, it was made plain by appellant's given instructions. This first instruction also says "if you find from the evidence;" and it is urged that it should have said "if you find from the preponderance of the evidence." The contrary was decided in Mitchell v. Hindman, 47 Ill. App. 431, and 150 Ill. 538, in Central Ry. Co. v. Bannister, 195 Ill. 48, and in Hueni v. Freehill, 125 Ill. App. 345. Appellant's given instructions showed where the burden of proof lay. We are also of opinion that the expression "if you find from the evidence" means a finding from a consideration of all the evidence, and therefore calls for a finding from a preponderance of the evidence. The second instruction told the jury that in determining the amount of the damages, if any, they could take into consideration the facts proven "in connection with your own knowledge and experience." It is argued that under that instruction a juror could have gone to the place of the injury during an adjournment and have made up his mind upon the case from his own observation. The instruction re-

lates only to the measure of damages and therefore could not be applied as counsel suggest. There was nothing the jurors could do in fixing the amount of the damages under the instruction except to apply their general knowledge and general experience, to which the instruction might well have been in terms confined. But appellant obtained an instruction on the measure of damages which called upon the jury to· take into consideration the expense of clothing, educating and supporting deceased while they believed he would be unable to support himself, and there was no evidence on these subjects, and appellant, therefore, in effect, asked the jury to act upon their knowledge and experience on the same subject. It is argued that the third instruction assumed that deceased might have lived beyond the age of twenty-one years, and was, therefore, incorrect. This instruction was approved in B. & O. S. W. Ry. Co. v. Then, 159 Ill. 535, and in M. O. Brewing Co. v. Stoltenberg, 211 Ill. 531.

The judgment is affirmed.

*Affirmed.*