# Chicago & Eastern Illinois Railroad Company v. Blanche M. Pittman, Administratrix.

## Gen. No. 4,821.

1. FELLOW-SERVANT—*when negligence of, does not preclude recovery against master.* If an injury results to a servant as the result both of the negligence of a fellow-servant and of the negligence of the master, a recovery may be had.

2. DECLARATION—*when cured by verdict.* A declaration defective in not averring notice is good after verdict.

3. SAFE PLACE TO WORK—*right of servant to rely upon presumption that master has furnished.* A servant has a right to rely upon the performance by the master of his duty to exercise reasonable care to furnish him with a safe place to work.

4. INSTRUCTION—*when not erroneous in failing to require the jury to find the facts from the evidence.* Every instruction need not tell the jury that they must find the facts from a preponderance of the evidence. It is sufficient if from the entire charge it appears that the jury were clearly directed to predicate their findings of fact upon the evidence adduced.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Kankakee county; the Hon. F. L. HOOPER, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

**Statement by the Court.** Harry M. Pittman was the conductor of a local freight train on the Chicago & Eastern Illinois Railroad running between Momence and Dalton. He lived at Momence, and made a round trip each week day. He had a crew of three brakemen under him, and an engineer and fireman. On March 18, 1905, he went north from Momence in the morning, and at Grant Park had cars to set out and switching to do at the Curtis brick plant. This plant was some five hundred feet or more east of the main line. The main line there ran nearly north and south. The switch track curved to the east and then to the north, and ran by the west side of the boiler room of said brick plant. There were windows in the boiler room through which an employe of the brick works was afterwards to

shovel the coal. The track was elevated by grading three or four feet above the natural surface of the land at that place so as to·bring the cars to the proper height for unloading from them into the building through the windows. Beyond these windows the switch track terminated. At its north end the rails were turned up and there was a bumping post. For twenty days to four weeks before the date above stated the bumping post had been twisted out of place to the east, and a short rail about three feet long which filled a space between the ordinary rail and the rail at the bumping post on the west side of the track had been missing. Just west of the place where a rail three feet long was out was a water tank standing on posts close to the track. The space between the cars and the boiler room on the east was too close for a person to pass through when the cars were in motion. On that day there were two cars standing on that switch track and there were three cars to be set in upon it, two of which were cars of coal to be set opposite the boiler room. The engine was headed north and pushed these cars around the curve and up the grade towards the boiler room. There were two cars of coal at the head. Pittman stood on the north end of the north car, and a brakeman further back where he could signal the engineer and fireman. The engine was small, and at the first attempt was unable to push these loads around the curve and up the incline. The engine and cars went back nearly to the main line, and then came east and north again with greater force. As the head of the cut of cars approached the boiler room its speed was variously estimated at from four to ten miles per hour. Pittman gave signals to slow down or stop which were not immediately obeyed, but steam had been shut off and the speed reduced before the head car reached the bumping post. As the head car came near the bumping post Pittman got down on the west side of the front end of the head or north car and stood with his feet on the oil box, and held by his hands upon the upper

part of the car. There was room to pass between the car and the tank. When the front trucks reached the place where three feet of rail was missing those trucks left the track and the front end of the car swung over to the west and somewhat down the grade, and Pittman was caught between the front trucks and the tank or posts supporting it. The trucks stopped at the bumping post, but the body of the car was shoved some distance over the bumping post, knocking it down. Pittman died from these injuries about two hours later. He left a widow, and a child was born to them sixteen days later. This action was brought by his administratrix to recover from the railroad company, for the benefit of his next of kin, the loss to their means of support.

The declaration contained seven counts, and plaintiff chiefly relies, upon the amended sixth count. It described the employment of deceased by defendant as conductor of said freight train and that he was engaged in placing coal cars upon said side track; and charged that defendant, disregarding its duty, allowed said side track to become out of order, defective and unsafe for the use of deceased while engaged in his duties as conductor, and had allowed a certain iron flange, called a fish plate, used to connect two rails or parts of rails, to become loose and unfastened from said rails or parts of rails or one of them for a long space of time, to wit, three weeks, and the rail on the west side of said track to come apart for the space of time of about three weeks, and to remain so apart for the space of so long a time as would have enabled defendant by the use of reasonable care to have learned of the pulling apart of said rail and of the defect in said track; that by reason of said defect said coal car left and ran off the side track and into or against a certain structure; that Pittman was performing his duties on said car with all due care and skill, and was exercising due care for his own safety, and did not know

of the loose and unfastened condition of said fish plate; and that by reason of said car leaving said track Pittman was caught and crushed between said car and said structure, and received injuries from which he died, etc. Defendant pleaded not guilty. There was a jury trial and a verdict for plaintiff in the sum of $5,000. A motion by defendant for a new trial was denied, plaintiff had judgment on the verdict, and defendant appeals.

At the close of plaintiff's proofs, and again at the close of all the evidence, defendant asked the court to direct a verdict for defendant. These motions were denied. At the close of all the evidence defendant asked the court to dismiss certain counts. The court refused the application, and held that the proper practice was to ask instructions based upon said counts. It is argued that the court erred in these rulings, and that the only instruction given at plaintiff's request was incorrect. It is conceded that the verdict was not excessive, if plaintiff was entitled to recover.

W. R. HUNTER and H. S. DICK, for appellant.

H. K. & H. H. WHEELER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Three feet of the west rail of this switch track had been gone, and the space vacant, for a period of from twenty to thirty days. This vacant space was in a track graded three or four feet above the natural level of the adjacent ground, so that if a car was pushed over this space where no rail was it would naturally go off the track and down the bank to the west. About three or four feet west from the side of a car when on the track at that place was a water tank resting on numerous posts. If a car went off this track and down this bank where the three feet of rail were missing, such car would be likely to strike the tank or its sup-

porting posts. Not only had this dangerous condition of its track continued so long that the jury could hardly fail to find that defendant had notice thereof, but also the proof showed that defendant had actual notice long before this accident, for the agent or someone else having authority to act for defendant at that station had ordered the necessary rails to supply the defect, and they had been sent, and at the time Pittman was killed they had been at the station a week or ten days, ready to be put in place. This proof warranted a finding that defendant had been negligent, that this negligence caused the death of Pittman, and that his death did not arise from a risk assumed by him from the nature of his employment. The proof had some tendency to show that the engineer kept the force applied to the cars longer than he should, but if this was negligence of a fellow-servant contributing to the injury, yet it was also negligence by defendant to permit a track to be used by its trains with three feet of rail on one side missing; and if Pittman was killed as the result both of the negligence of a fellow-servant and of the negligence of the master, the latter is liable. C. & A. R. R. Co. v. House, 172 Ill. 601; Pullman Palace Car Co. v. Laack, 143 Ill. 242; C. & N. W. Ry. Co. v. Gillison, 173 Ill. 264. The conductor's duties did not necessarily take him upon the switches on all occasions. Three witnesses who were in position to know testified that they had no recollection of seeing Pittman upon that switch track for a month before the accident. One of them said on cross-examination that "he" was there every day, but a reading of the passage from the record convinces us that he meant that he, the witness, was on that track every day, and that he did not refer then to Pittman. Defendant introduced two witnesses who testified to a conversation with Pittman several days before he was killed, wherein his language implied that he knew that the bumping posts were out of repair. There was

rebuttal which tended to overcome the evidence of one of these witnesses as to this conversation. But if Pittman did know that the bumping post was out of repair, he may have learned it by report or hearsay and not by personal observation, and information from others that the post was out of repair would not necessarily imply knowledge that three feet of the railroad track was out. It was very improbable that he would have ordered a car shoved over a place where he knew three feet of rail were gone, and would have placed himself at the head of a car which was to pass over such a place and between two structures, each close to the track. This bumping post had not been knocked out of place by Pittman's train, but by a switch engine which came there to do some work. Defendant asked a special verdict on this question and obtained an answer that deceased did not know of the condition of the track and bumping post before he started to place these cars at the boiler room. The proof permitted that special verdict. The court therefore properly refused to direct a verdict for defendant as there was proof tending to establish every element of a case for plaintiff.

While a plaintiff may dismiss his suit as to any count of his declaration, defendant is not entitled to compel him to do so upon the trial because of any supposed lack of proof. If plaintiff was entitled to have any direction from the court as to any count of the declaration, which we do not decide, it could only obtain such action by presenting instructions on the subject, as the court below properly held. Defendant did not choose to present the instructions which the court suggested. If plaintiff made a case entitling her to recover under the amended sixth count and under the fifth and seventh counts, then it is unimportant whether or not plaintiff was entitled to recover under either of the first four counts. The fifth and seventh counts were like the amended sixth, but more general. The seventh

was defective in not averring notice to defendant, but it was good after verdict. City of East Dubuque v. Burhyte, 173 Ill. 553; Boyce v. Tallerman, 183 Ill. 115; Sargent Co. v. Baublis, 215 Ill. 428.

The instruction given at plaintiff's request was very carefully guarded. It is argued that it should have submitted the questions whether deceased could have known of the condition of the track by the exercise of diligence, whether deceased had equal means with defendant of knowing that the track was defective, and whether defendant knew of the defective condition of the track for a sufficient length of time before the accident to enable it to notify the deceased or to make repairs. We think these suggestions are not applicable to the case made by the proofs. It was not deceased's duty to inspect the tracks. Defendant had other servants upon whom that duty rested, who were not fellow-servants with Pittman. Pittman was not required to exercise diligence to learn if the rails were in place upon the track. He had a right to rely upon the master to furnish him a safe switch track upon which to do his work. As defendant had known of the defect long enough to actually obtain the necessary rails with which to make the repairs, and had had them lying at its station, a few hundred feet from the defect, a week or ten days, the jury could not have found that defendant had not known of the defect long enough to enable it to notify Pittman or to make the repairs. No error was committed in omitting those elements, under the facts in this case. It is argued that the instruction did not tell the jury that the burden was upon plaintiff to establish the elements therein named as essential to a recovery by plaintiff, and did not require the jury to find these elements from a preponderance of the evidence. At the outset the instruction says: ''if you believe from a preponderance of the evidence in this case.'' Later on it uses the expression ''if you further believe from the evidence,'' ''provided you further

find from the evidence," and the like. In I. C. R. R. Co. v. Warriner, 132 Ill. App. 301, we held that to find or believe from the evidence means to find or believe from a consideration of all the evidence, and therefore calls for a finding from the preponderance of the evidence. To the same effect is Donk Bros. Coal Co. v. Thil, 228 Ill. 233, published since this opinion was written. Several of the instructions given at the request of defendant stated that plaintiff must prove her case by a preponderance of the evidence, and it was not essential that the rule should also be stated in the instructions given at plaintiff's request. Mitchell v. Hindman, 150 Ill. 538; Central Ry. Co. v. Bannister, 195 Ill. 48. We are of opinion that the instructions are not subject to the other criticisms made upon them, and that the record is free from reversible error.

The judgment is therefore affirmed.

*Affirmed.*