## John Taylor, Defendant in Error, v. Illinois Central Railroad Company, Plaintiff in Error.

### Gen. No. 5237.

1. VERDICTS—*when set aside as against the evidence.* It is the duty of the appellate courts under the law as it exists in this State to consider the testimony, and if they find that the verdict and judgment are not supported by it, or are clearly against the weight of the evidence, to set aside such verdict and reverse the judgment.

2. ORDINANCES—*what essential to establish existence of.* In order to show the existence of an ordinance the publication itself in which such ordinance is contained must somewhere, either on the title page or in a proper certificate at the end, show that it is published by authority of the city.

3. NEGLIGENCE—*what does not show violation of ordinance requiring a flagman at crossing.* To show that there was no flagman at one side of a crossing is not sufficient to show a violation of an ordinance requiring flagmen at crossings.

4. CONTRIBUTORY NEGLIGENCE—*when person crossing railroad tracks guilty of.* Held, that the plaintiff in this case was guilty of contributory negligence in seeking to cross the railroad tracks in question, it appearing from the evidence that he had capacity to comprehend and fully know the danger of crossing a railroad track, that he possessed a certain familiarity with the management of trains at such crossing and that there was nothing to obstruct his view of the particular locomotive which caused his injury.

Action in case for personal injuries. Error to the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the October term, 1909. Reversed with finding of facts. Opinion filed March 11, 1910.

SNAPP & HEISE, for plaintiff in error; W. S. KENYON and J. G. DRENNAN, of counsel.

KRUSE & PEDEN, JOSEPH W. JONES and COLL MC-NAUGHTON, for defendant in error.

MR. JUSTICE THOMPSON delivered the opinion of the court.

John Taylor brought suit in the Circuit Court of

Will county against the Illinois Central Railroad Company to recover for personal injuries sustained while crossing the tracks of defendant company at the intersection of its tracks and Ninety-first street in South Chicago. Plaintiff recovered a verdict and judgment for $4,000. The defendant prosecutes this writ of error to review that judgment.

The declaration contains seven counts. The first count avers that defendant negligently and carelessly operated a locomotive, etc.; the second count avers that the defendant wantonly propelled a certain locomotive, etc.; the third count avers a failure to ring a bell or sound a whistle as required by statute, etc.; the fourth count avers an ordinance of the city of Chicago requiring a flagman at railroad crossings, and a failure on the part of the defendant to comply with such ordinance. The remaining counts aver respectively certain ordinances which, however, were not attempted to be offered in evidence and may be disregarded; all the counts aver due care on the part of the plaintiff.

The evidence shows that where the tracks of plaintiff in error cross Ninety-first street there are several parallel tracks belonging to the B. & O. Ry. and to the plaintiff in error. The B. & O. has the east five tracks and west of the B. & O. tracks are two Illinois Central tracks sixteen feet apart. On each side of the street there is a sidewalk, crossing all the tracks; between the Illinois Central tracks adjoining the north side of the north sidewalk is a small building used as a ticket office; immediately north of this building is a platform about ten feet wide, elevated about four feet, running north about 350 feet, with a track of plaintiff in error on each side of it which is used solely for suburban traffic. Trains going south use the west track and trains going north use the east track. The train pulled by the locomotive by which defendant in error was injured did not go further south than Ninety-first street, which appears to be

the end of the suburban traffic. There were gates, on the east side of the B. & O. tracks and on the west side of the Illinois Central tracks, which were operated by the railroads from a tower situated north of the sidewalk between the two most westerly B. & O. tracks. The locomotive by which defendant in error was injured was equipped with headlights, lamps and cowcatchers at each end. It came south with its train of passengers on the west track and stopped at the platform for the passengers to unload; it then passed south across the street to a switch which crossed over onto the east suburban track, then backed the train to the east side of the platform; the locomotive was then uncoupled from the south end of the train and ran back to the switch, then over on to the west track then north across the street to the north of the platform where another switch was located on which it crossed over to the track the train was on, and then back on the track and coupled to the north end of the train, ready to pull the train to Chicago. It was while the locomotive was crossing Ninety-first street going north to pass around the train that defendant in error was struck by the locomotive and injured.

Defendant in error at the time of the accident was a boy just past the age of eight years, was brighter than the average boy of his age, with good eyesight and hearing; had been taught the danger of crossing railroad tracks, had been much about the Ninety-first street ticket office of plaintiff in error where he had been a newsboy selling papers in that neighborhood for two years; and was well acquainted with one of the ticket agents, often running errands for her. On November 8, 1905, at about six o'clock in the evening, he was sent by his mother to a meat market on the west side of the Ninety-first street crossing of the tracks; when he reached the crossing the gates on the east side were down and a long B. & O. freight train was crossing the street on the second B. & O.

track.   While the train was crossing the street a number of persons were waiting until the train cleared the street; the east gate was then raised and they started across on the north sidewalk, the west gate still being down.   Defendant in error went ahead of the others in a half running and hopping fashion, going sideways with his face to the north and just as he reached the west track of plaintiff in error the locomotive going north on the west track to pass around the train to the other end struck him, injuring him so that he lost his left leg above the knee.

It is assigned for error that the judgment cannot be sustained on the evidence.   The only evidence offered to sustain the first, second and third counts is that concerning the rate the locomotive was run.   Two witnesses testify it was running at the rate of twenty to twenty-five miles an hour and two that it was running very fast.   Seven witnesses testify it was running very slow, at from five to ten miles an hour. The proof is that the locomotive went from thirty, to one hundred and thirty feet after striking the boy.   The distances are given that it had come from the point of the switch when it got to the west track, and how far it was going before it would have stopped to back up to the train.   The great preponderance of the evidence is that the speed of the engine as it crossed the street was between five and ten miles per hour.   The testimony that it was running twenty or twenty-five miles per hour is unreasonable in view of the facts.   It was only running from a switch just south of the street to the switch just north of the passenger platform.   It had only just started from the south switch.   It had to stop for the switch to be thrown when it reached the place to cross over.   If an engine could be forced to a speed of twenty or twenty-five miles per hour in so short a distance, it is not reasonable to believe that an engineer would try to get it such a speed for an instant when he

had to stop immediately. It would be a foolish or
playful act in which an engineer would not be likely
to indulge. The clear preponderance of the evidence
and all the probabilities support the claim of defend-
ant in error as to the speed of the engine as it crossed
the street. One witness testifies he did not see a
headlight, eight testify the headlight was burning on
the locomotive, and there were two electric lights in
the immediate vicinity. Two witnesses testify the
bell was not rung, and eight testify the bell was ring-
ing. The preponderance of the evidence applicable
to the first three counts, shows that plaintiff in error
was not guilty of the negligence charged therein, and it
is very doubtful if a judgment can be sustained on
the evidence in the record on any of those counts, if
plaintiff had been exercising due care. "It is the
duty of the Appellate Courts under the law as it exists
in this State to consider the testimony, and if they
find that the verdict and judgment are not supported
by it, or are clearly against the weight of the evidence,
to set aside such verdict and reverse the judgment."
C. & E. R. R. Co. v. Meech, 163 Ill. 305; Brown Hoist-
ing & Conveying Machine Co. v. Bennett, 96 Ill. App.
514.

It is also assigned for error that the court im-
properly admitted in evidence an alleged ordinance
of the city of Chicago requiring the railroad to keep
a flagman in certain portions of the city in which is
included this crossing, and which was offered to
sustain the fourth count. The attorney who offered
it in evidence stated that it was passed March 20,
1905, published in pamphlet form April 15, 1905, and in
book form October 15, 1905, but made no proof that
it was printed and published by authority of the city
council. The record shows that counsel for plaintiff
in error asked counsel for defendant in error: "Is
that all you offer in connection with 1991?" (the sec-
tion), and counsel replied, "Yes, sir." Objection
was made to the admission of this evidence "on the

ground that it has not been shown by the record that it was an ordinance of the city of Chicago in force at the time of the accident." No attempt was made to make any proof which would make it admissible. The statement of counsel did not prove it was published by authority of the city council. The publication itself, somewhere, either on the title page or in a proper certificate at the end, must show it is published by authority of the city, to make it competent evidence. C. & A. R. R. v. Wilson, 225 Ill. 50, 128 Ill. App. 88; Illinois, Iowa and M. Ry. Co. v. Minnihan, 129 Ill. App. 432; I. C. R. R. v. Warriner, 132 Ill. App. 301.

Concerning the evidence applicable to the fourth count, counsel for defendant in error limited their questions as to the presence of a flagman at that crossing, to the north side of Ninety-first street. The question put to the plaintiff was: "On that night when you were hurt, I will ask you if you saw any watchman or flagman on the north side of Ninety-first street on the cross walk?" Answer, "No, sir." William Lawlow was asked: "What if any watchman was there on the north cross walk as that engine approached it." Answer, "There was no watchman that I saw at all." Dennis Egan was asked, "What if any watchman did you see on the ground on the north cross walk of Ninety-first street at that time?" Answer, "I didn't see no watchman." Reuben Peterson was also asked if he saw a watchman at that north crossing and made the same answer. This was all the evidence on that question and it is very suggestive that defendant in error should so peculiarly limit these questions. If the alleged ordinance in evidence had been properly admitted it only required a flagman at the crossing, which would include the driveway and the south sidewalk as well as the north sidewalk. The evidence is not sufficient to sustain a judgment on that count.

It is also assigned for error that a peremptory in-

struction should have been given as requested by plaintiff in error for the reason that defendant in error was not in the exercise of due care. The defendant in error says he was hurrying on the errand his mother sent him to do; that he did not look south; that some one whistled to him and he looked north; that the west crossing gates were up; that he did not see the engine; that he did. not hear the bell; that he did not see the headlight; that he did not see the conductor who stood on the south walk; that he did not see the street car standing west of the west gates waiting to go across, and that he looked north all the time. The great preponderance of the evidence shows that he had the capacity to comprehend and fully knew the danger of crossing a railroad track and that he was familiar with the management of the suburban train at that depot; that there was nothing after the B. & O. train had passed to obstruct the view of the locomotive of plaintiff in error and that several persons called to defendant in error before he was on the track. One of the trainmen standing on the pilot of the engine saw the defendant in error when he was opposite the gate tower and when the locomotive was at the south sidewalk and seeing the boy hopping towards the track the locomotive was on with his back towards the locomotive called to him and tried to catch hold of him just as he stepped on the track, and he heard others "holler at him." The west gate was down and a street car stood there waiting to cross. These facts all show the defendant in error was not in the exercise of due care, and that he was injured because of his own negligence. Even if the ordinance offered to prove the fourth count had been properly proved a judgment could not be sustained under the evidence. The judgment is reversed with a finding of fact.

*Reversed with finding of fact.*

Finding of fact: The defendant in error was not in the exercise of due care at the time he was injured and was injured because of his own negligence.