## Frank F. Follett, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 6,573.

1. TRIAL, § 124*—*when statements of counsel are not reversibly erroneous.* In an action for damages for death of a child, it was not reversible error for counsel for plaintiff to state in his opening argument that the parents of deceased had told him that deceased was a very beautiful child and had long curly hair, where an objection to such remarks was sustained.

2. APPEAL AND ERROR, § 1712*—*when error as to damages waived.* An assignment of error, in an action for negligent death, that the damages were excessive, is waived where not argued in the opening brief.

3. TRIAL, § 131*—*when questioning of credibility of witness by counsel not error.* It is proper for counsel for plaintiff, in an action for negligent death, to question the truth of the testimony of a witness for defendant, if the evidence warrants such criticism.

4. APPEAL AND ERROR, § 1514*—*when remarks of counsel not reversibly erroneous.* Remarks of counsel cannot be complained of as reversible error where an objection to such remarks is sustained.

5. APPEAL AND ERROR, § 1514*—*when incorrect statement of counsel is not reversible error.* The fact that plaintiff's attorney, in an action against a railroad company for the negligent death of a child, referred to missing mail, which had been taken from the depot platform where the accident occurred and was found in the house of the parents of deceased about one year before the accident, as United States mail, was not reversible error where the court immediately corrected counsel and stated that it was train mail, as it was, in fact.

6. TRIAL, § 187*—*what constitutes waiver of motion for directed verdict.* The introduction of testimony by defendant, after making a motion for a direction of a verdict at the close of plaintiff's evidence in chief, constitutes a waiver of the motion.

7. TRIAL, § 195*—*when refusal of directed verdict for defendant proper.* It is proper to refuse a motion for a directed verdict in defendant's favor, in an action for negligent death, at the close of all the evidence, where the evidence tends to make out a case for plaintiff.

8. NEGLIGENCE, § 107*—*what is effect of by parents of child negligently killed.* In an action for the negligent death of a child,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Follett v. Illinois Central R. Co., 213 Ill. App. 62.

if the preponderance of the evidence shows that the parents did not exercise the same degree of care towards the child as ordinarily prudent persons would exercise under the same circumstances, and such failure by the parents contributed to the injury, then the defendant should be found not guilty.

9. INSTRUCTIONS, § 154*—*when modification by eliminating portion referring to burden of proof not error.* In an action for the negligent death of a child, the modification of an instruction, which was requested by defendant, placing the duty on the parents of the child to exercise the same degree of care concerning her as an ordinarily prudent person would exercise under like circumstances, and stating that the jury should find defendant not guilty unless they believed from the preponderance of evidence that the parents exercised that care, by depriving the defendant of the portion casting the burden of proof upon plaintiff, was not error where other instructions correctly stated the law as to the burden of proof.

10. RAILROADS, § 519*—*when may not maintain push car on platform unlocked.* If the presence of a railroad push car upon an abandoned depot platform is calculated to attract little children to come upon the platform and push the car back and forth upon the platform and to ride upon the car, and if that is dangerous to little children, the company has no right to maintain the push car on the platform unlocked.

11. RAILROADS, § 593*—*when modification of instruction as to right to maintain push car on premises is proper.* In an action against a railroad company for the negligent death of a child, which was killed as the result of being struck by a passing train while playing with an unlocked push car on an abandoned depot platform, the modification of an instruction that the defendant had the legal right to place and maintain the car on its premises, so as to state that defendant ordinarily had such right, was proper.

12. RAILROADS, § 593*—*when instruction on liability of railroad for death of child struck by train while playing with push car properly refused.* In an action against a railroad company to recover for the death of a child, which was killed by defendant's train while she was pushing an unlocked push car on an abandoned depot platform, an instruction that defendant was not liable unless the jury found from the preponderance of the evidence that defendant should have anticipated before the day of the accident that deceased or other children would have been attracted to the premises by such push car and would have been injured or killed by a railroad train in playing with such car, was properly refused.

13. NEGLIGENCE, § 110*—*when of parents is question for jury.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Parents who are poor and unable to procure a nurse to look after their children are not required to keep a constant watch over them, and the want of such care cannot be imputed to the parents, the negligence of the parents in a particular case being a question for the jury.

14. NEGLIGENCE, § 110*—*when of parent in care of child not shown.* Evidence *held* insufficient to show that a poor coal miner, and his wife, who had to take care of a month-old child, were negligent in permitting their 7-year-old daughter to go on the street and visit an abandoned depot platform 700 feet away, where she was struck by a passing train while playing with an unlocked push car .

15. RAILROADS, § 582*—*when death of child by train while playing with push car shown.* Evidence *held* sufficient to sustain a finding that deceased, a child 7 years old, was killed by a passing freight train while playing on an abandoned depot platform with an unlocked push car.

16. APPEAL AND ERROR, § 1410*—*when verdict not disturbed.* A verdict approved by the trial judge should not be disturbed on appeal unless manifestly against the weight of evidence.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1918. Affirmed. Opinion filed October 10, 1918. Rehearing denied and opinion modified November 13, 1918.

WOODWARD & HIBBS, for appellant; JOHN G. DRENNAN, of counsel.

R. C. DONOGHUE, BUTTERS & CLARK and HOWARD H. BAYNE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On June 24, 1913, Cassie Kosinski, then over 7 years old, while playing upon a railroad platform of the Illinois Central Railroad Company at an abandoned depot at Oglesby in La Salle county, went under the wheels of a passing freight train and received injuries from which she died next morning. She left surviving a father, a mother, four sisters and a brother,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and the administrator of her estate brought this suit to recover damages occasioned to the next of kin by her death. An original declaration and additional counts were filed, which charged that she was a child of tender years, etc.; that she was attracted to said platform by a push car, standing thereon; that the same was an attractive nuisance, and that she received her injuries while playing therewith. This was stated in various ways in a very full and elaborate declaration. Defendant pleaded the general issue, there was a jury trial and a verdict for plaintiff for $3,500, motions for a new trial and in arrest of judgment were denied, plaintiff had judgment and defendant appeals.

It is argued that the court erred in permitting Annie Kosinski, a sister of deceased, to testify in rebuttal that she did not in 1913, after her sister was killed, cross the railroad tracks with a sack of coal and get struck by the corner of a car while Homer Reynolds was there. As a witness for plaintiff in chief, she had been cross-examined as to whether such an event had occurred when Homer Reynolds was there. Afterwards Homer Reynolds testified for defendant to such an event, but did not make it of the specific date concerning which Annie had been interrogated. We think it was proper to again interrogate her on that subject after Homer Reynolds had testified. This was an event occurring long after the death of Cassie and had very slight bearing upon the issues in this case, and we fail to see that any error was committed in the ruling. It is argued that counsel for plaintiff made prejudicial remarks to the jury. In opening the case he stated to the jury that the parents of Cassie had told him that she was a very beautiful child and had long curly hair. The court sustained defendant's objection to the statement. The only effect it could have injurious to defendant would have been to enhance the damages. Appellant assigned as error that the damages awarded were excessive, but that supposed

error was not argued in the opening brief and was therefore waived. Objection is made to two statements made by plaintiff's counsel in the closing argument. He questioned the truth of the testimony of defendant's witness, Oberstar. This he had a right to do under the evidence, but the court sustained the only objection that was made to that statement. Defendant offered proof of an incident occurring about a year before Cassie was killed, when some mail lying upon the depot platform was missing, and the agent went to the Kosinski house and one of the little girls crawled under a bed and produced it. In discussing this evidence plaintiff's attorney spoke of it as United States mail, and it is claimed this was reversible error. The court immediately corrected counsel and he accepted the correction and stated that it was train mail, which was true. We fail to see anything in this statement which could have prejudiced appellant.

The court denied motions by defendant at the close of plaintiff's evidence in chief, and at the close of all the evidence, to direct a verdict for defendant. It is argued that these rulings were erroneous. After the first motion was denied, defendant introduced testimony and thereby waived that motion. It is entirely clear that there is evidence tending to show that Cassie was playing with the push car when injured and that it was attractive to children of tender years and did attract Cassie to that place and that she was injured while playing therewith. This evidence tended to make a case for plaintiff, and the court properly refused the second motion. It is argued that the court erred in modifying instruction No. 23, offered by defendant. As offered, it said that it was the duty of each of the parents of Cassie to exercise the same degree of care concerning her as an ordinarily prudent person would exercise under like circumstances, and that the jury should find defendant not guilty unless they believed from the preponderance of the evidence

that said parents did exercise that care. The first part of the instruction was given as asked, but the latter part was so changed as to tell the jury that if they believed from the preponderance of the evidence that at the time of the injury to Cassie her parents did not exercise that degree of care, and that such want of care on the part of the parents contributed to the injury, they should find defendant not guilty. The instruction, as given, did not misstate the law, for the law is that if the preponderance of the evidence shows that the parents did not exercise that care and such failure by the parents contributed to the injury, then defendant should be found not guilty. The modification did deprive defendant of that portion of the instruction which cast the burden of proof upon the plaintiff upon that subject. If that had been the only instruction upon that subject, the modification would have been erroneous. Several general instructions given for defendant covered the ground, but No. 12, given for defendant, was direct and complete on this subject. It stated that in order for the plaintiff to recover, he must prove by a preponderance of the evidence eight propositions stated, the fifth of which was: "That the parents of said Cassie Kosinski, and each of them, were in the exercise of due care for their child's safety." It was then stated in very decisive language that the burden of proving each of these propositions was on the plaintiff, and that if he failed to prove any one of them, by a preponderance of the evidence, or if on any one or more of them the evidence was evenly balanced or preponderated for defendant, plaintiff could not recover and the jury should find defendant not guilty. No. 18, as requested by defendant, said that defendant had the legal right to place and maintain said push car on its premises. The court so modified it as to read that defendant had that legal right ordinarily. The instruction was calculated to mislead the jury. The section men who had

charge of this push car, and sometimes used it and sometimes left it at the north end of the depot away from the tracks, were provided with a chain and lock, and the jury might reasonably infer from the evidence that it was their duty to lock it when leaving it on said platform. It was left unlocked on this platform at the time in question, and the declaration so charged. If the presence of that push car on the platform was calculated to attract little children to come upon the platform and push the car back and forth upon the platform and to ride upon said car, and if that was dangerous to little children, then the defendant did not have the right to maintain said push car on said platform unlocked. The jury would have been likely to understand from said instruction that defendant had that right. Therefore the instruction might have been refused, and its modification did not harm defendant. The court refused No. 25, offered by defendant, which said that defendant was not liable, unless the jury found from the preponderance of the evidence that defendant should have anticipated before the day when Cassie was injured that she or other children would have been attracted to the premises by said push car and would have been injured or killed by a railroad train in pushing with said push car. It was not necessary for defendant to have anticipated just how a child might be injured at that place. It was sufficient if defendant had an opportunity to know that some injury might result to children playing with such unlocked push car on that platform. The declaration was practically directed to the fact that said push car was unlocked. We find no reversible error in the rulings of the court upon the instructions.

It is contended that the parents were negligent and that therefore plaintiff cannot recover. The father was a coal miner and went into the mine at 6 a. m. that day and came out about 3:30 p. m. The family had supper about 6 p. m. The mother had been doing her

family washing that day. She had a baby a month
old and it was cross and required her attention. Dur-
ing the supper the father became ill and went to his
bedroom and lay down and went to sleep. Cassie was
7 years and 9 months old and was bright and intelli-
gent, and had been going to school alone two blocks
away from the home for 2 years. She went out upon
the porch after supper, and the mother was busy with
the cross baby, and the mother did not know that Cassie
left the porch. The old depot was 700 feet away.
Twenty minutes after Cassie left the porch the family
were notified of the injury. In *Illinois Cent. R. Co. v.
Warriner,* 132 Ill. App. 301, we had occasion to
cite and fully discuss the decisions of the Supreme
Court of this State on the question of the care for
their children required of parents who are laboring
people. We need not repeat those authorities here nor
all that is there said, but it was there held that where
the parents depend upon their labor for the subsist-
ence of their children and are unable to employ nurses,
who may keep a constant and vigilant eye upon their
children, it must be left to the jury to say whether
they were guilty of negligence in suffering their chil-
dren to be upon the streets, and that the same rule
should not apply to such parents as to those whose
means enable the mother to give constant personal
attention to her children, and that the law does not
require that persons in such a situation in life shall
keep a constant watch over their children nor can the
want of such care be imputed to them as negligence.
In affirming that judgment in 229 Ill. 91, the Supreme
Court held that whether the parents exercised the de-
gree of care required of them was a question of fact
for the jury. We are of opinion that the evidence did
not require the jury to find that these parents were
negligent on the day in question.

The Village of Oglesby is 4 or 5 miles south of the
City of La Salle on the main line of the Illinois Cen-

tral, which is there a single-track road, running in a north and south direction. Prior to December, 1912, the depot at Oglesby was on a side hill. Near the Oglesby coal mine a little way from the depot was a ravine and then a sharp fall of 100 feet to the vicinity of the Vermilion River, and east of the river was Deer Park. The depot was west of the track and was 48 feet long north and south. Between the depot and the track was a platform 14 feet wide and somewhere from 150 to 250 feet long. The depot was a little south of the center of the platform. The platform was of cinder covered with crushed rock and the surface was smooth. There was a wooden curbing around it. The platform was near enough to the track so that the bodies of box cars projected over it. In December, 1912, this depot was closed and a new depot opened half a mile or a mile further south, in which direction the population had shifted since the old depot was built. Thereafter the old depot was kept locked and was used only by the section men in which to store their tools, etc. There was on the platform what is called a push car, having a platform with four wheels under it. The car platform was about 8 feet long and 5 or 6 feet wide and was used by the section men when they wished to carry rails or ties. Sometimes it was used, but often it remained upon the platform. A chain was provided by which its wheels could be locked when not in use, and it sometimes stood at the north end of the depot locked. It often was on the platform unlocked. This accident happened July 13, 1913. The proof from both sides shows that little children often went upon the platform to play on and about this push car. They played upon it when it was locked. When it was unlocked they pushed it up and down the platform and some of them rode upon it. This was often done in the presence of the employees of the railway. A public highway reached the north end of the platform but there was no fence about the depot, which was just outside the limits of the village, so that chil-

Follett v. Illinois Central R. Co., 213 Ill. App. 62.

dren and others could come upon it from any direction. That this platform and this push car were attractive to children of tender years and led them in their play to be near the track is proven by witnesses for both parties, and is not disputed. The material question is whether the jury were warranted in finding from the evidence that Cassie Kosinski at the time she was injured was playing on that platform with this push car. Staney Waytkes lived in Deer Park, east of the river. After supper on the night in question he left his home, crossed the river, went up steps provided for that purpose to the right of way of the Illinois Central Railroad, crossed the track about the north end of this platform, and went south on the platform on his way to the main part of the Village of Oglesby. He had known the Kosinskis in the old country and was acquainted with the children. Just prior to his reaching the platform a passenger train had gone south at somewhere from 7:05 to 7:25 p. m. On a passing track a few hundred feet south of the platform stood a yard engine from La Salle and directly behind it 28 loaded box cars, and, south of those, 8 empty coal cars, all to be taken to La Salle and waiting only for the passenger train to pass. Waytkes testified that when he came upon the platform the passenger train had gone south and this freight train had started north and was pulling out of the passing track. He testified that at that time Cassie was towards the south end of the platform, close to the track, playing with and pushing this push car north, and that he passed west of her on the platform and the freight train passed him on the track. When the train got part way by him he heard screams or shouts and turned around and started north to see what was the matter and saw a brakeman just taking Cassie off from the track. Her legs had been run over and her feet cut off. There was considerable commotion. Various persons gathered there. Mrs. Kosinski came

running from her home 700 feet away and took the child and started home with her, and Waytkes resumed his way south to Oglesby. If his story was true, it made a case for the plaintiff when coupled with other proof that Cassie, who was then 7 years, 9 months and 11 days old, was a bright, intelligent and careful child and that no one saw the accident happen. Defendant seeks to meet this proof in several ways. It is claimed that on cross-examination Waytkes told different stories as to exactly where he saw Cassie on the platform and exactly where he saw her picked up by the brakeman. The place where she was picked up a little way north of the depot was fixed by the evidence of other witnesses and by blood along the rail. Waytkes testified through an interpreter and testified that he could talk but little English. A few days before the trial Waytkes had been called to the office of the Oglesby Coal Company, for which he worked, and had been examined in English by an agent of the railroad company and his statement taken down by a stenographer, and this statement was used in cross-examination and was introduced in evidence and was supported by the testimony of the agent and of the stenographer. Defendant claimed that in that statement Waytkes differed in certain particulars as to places from what he testified in chief. Defendant contends that it was thereby satisfactorily shown that his evidence was false. This cross-examination and this statement were competent to be considered by the jury in determining whether they believed the witness. The verdict shows that the jury did believe him. We have carefully read his evidence in the record and are satisfied that it did not require the jury to disbelieve the witness. He evidently spoke but little English and we are inclined to the opinion that his different statements as to the places were due in part to misunderstandings between himself and the interpreter and sometimes to his misunderstanding the question put to him. Some of the misunderstandings the witness

himself straightened out before he left the stand. He never said anything contradicting the statement that the girl was pushing the push car so close to the track and that he heard her scream and saw her taken out from underneath the train or off the rails. Defendant sought to contradict him in other ways. Two laboring men, Oberstar and Stein, were stealing a ride on top of a box car about the middle of the line of box cars. They were seated on the board on the middle of the car facing west. Oberstar testified that he saw this little girl running along next to the second or third car south of them and putting her hand on the passing car, and that she did not have a push car. Plaintiff's counsel claim, from the proof as to the height and width of the box car and the fact that this was a straight track there, that a person so seated on the top of the car on the center board could not see a child next to or near a car two or three cars back. Stein, who corroborated him in part, testified that a person close to the car could not be seen from their position. Defendant also sought to prove that the push car then stood at the north end of the depot, and that a woman with a baby was seated thereon. There was proof to that effect. There was also proof that that woman and baby had been there, but were not there after the passenger train went south. There was also proof that after the accident different witnesses thought they noticed the push car at different places on the platform towards the north end of the depot. Some of the witnesses gave the name of the woman, but only one testified that she sat on that push car after the passenger train went by. All this evidence was for the consideration of the jury; and the instructions were such that the jury could not find for plaintiff unless they believed that Cassie at the time of her injury was pushing this car close to the track. Upon a careful consideration of all this evidence we cannot say that the jury, acting reasonably in the eye of the law, should not have believed the testimony of Waytkes

or that another jury would return a verdict against the plaintiff.

On the cross-examination of the two sisters of Cassie who testified and of other witnesses for plaintiff, defendant sought to show that the Kosinski children, including Cassie, before that time had often gone about the track and the coal company's dump, picking up stray pieces of coal and carrying the same either in a little sack or in the dress of such child. This was denied by Cassie's sisters; and other witnesses testified that they had never seen Cassie doing that. Defendant also interrogated plaintiff's witnesses as to the picking up of coal by Cassie's sisters for months after this accident. This also they denied. Defendant produced numerous witnesses who testified that the Kosinski children had often been seen by them picking up coal along the track and at the dump, and also picking up refuse from the dump from the company's store near by. All this was immaterial, on the question how the accident happened, unless Cassie was picking up coal at the time she was hurt. The only evidence tending to show that was by one witness for defendant, who testified that after the accident and after the child had been removed, he saw a sack on the platform opposite the depot which had some coal in it, and by another witness for defendant who testified that he saw two sacks on that platform. The plaintiff showed that a number of other children were playing on the platform at the same time, and no one testified to seeing Cassie have such a sack or any coal or identified the sack as one which she had carried. Our conclusion is that this evidence is insufficient to disturb the verdict, and that as to the facts, a verdict either way approved by the trial judge could not be disturbed by this court as manifestly against the weight of the evidence. The judgment is therefore affirmed.

*Affirmed.*