## The Chicago and Alton Railway Company

*v.*

## Hugh Wilson, Admr.

*Opinion filed December 22, 1906—Rehearing denied Feb. 8, 1907.*

1. Evidence—*when proof of careful habits is competent upon a question of due care.* Where there are no eye-witnesses to a fatal accident at a railroad crossing, proof that the deceased was a woman of careful habits is competent, as tending, with the natural instincts of self-preservation, to show that she was exercising ordinary care for her safety.

2. Same—*what does not render proof of careful habits incompetent.* Proof of careful habits of the deceased is not rendered incompetent by the subsequent testimony of the engineer that he saw the deceased when she was within a few feet of the track, but that she stopped when he sounded the alarm and that he did not know she had been struck by the train until told of it the next day.

3. Same—*admissibility of a book of ordinances—force as evidence.* A book of ordinances purporting to be printed by the authority of the municipal corporation is *prima facie* evidence of the passage and publication of the ordinances but is not conclusive.

4. Same—*what essential to overcome prima facie proof made by introducing book of ordinances.* To overcome the *prima facie* proof

made by introducing a book of ordinances in evidence it is not sufficient that the journal of the proceedings of the municipal corporation has cast a doubt upon the validity of the ordinance by giving incorrectly the date of its passage and the title of the chapter in which it was included, but it must be shown that the ordinance was never, in fact, passed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Grundy county; the Hon. S. C. Stough, Judge, presiding.

J. L. O'Donnell, and T. F. Donovan, (Winston, Payne & Strawn, of counsel,) for appellant.

Charles F. Hanson, and Browne & Wiley, for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a judgment of the circuit court of Grundy county in favor of appellee, against appellant, in an action on the case for wrongfully causing the death of the plaintiff's wife, Anna Wilson. The declaration consisted of four counts. The first charged defendant with running one of its passenger trains through the village of Braceville, in said county, and across its streets, at a dangerous rate of speed, whereby the deceased, while exercising due care in crossing the said railroad track on Main street, in said village, was instantly killed.. The second count charges the defendant with running a passenger train across said Main street without ringing a bell or sounding a whistle in approaching said crossing, as required by the statute, whereby the said Anna Wilson, while in the exercise of due care, was run over and killed. The third and fourth counts allege a violation of an ordinance of the village of Braceville by the defendant in run-

ning its train through said village at a greater rate of speed than permitted by said ordinance. The plea was not guilty, and upon the trial before a jury judgment was rendered for the plaintiff. The verdict was for $3500, but $500 of that amount was remitted and judgment entered for the balance.

The defendant's railroad runs through the village of Braceville from north-east to south-west, crossing Main and Mitchell streets. The deceased lived on Main street, on the south side of the tracks, and on Saturday evening, October 24, 1903, she left her home and walked west on Main street, crossing the tracks, to a grocery store on the north-east corner of Main and Mitchell streets to purchase family provisions. After making the purchases she started back home, passing east along the north side of Main street. About the time she left the store one of the defendant's trains, known as the "Kansas City Hummer," passed in a south-westerly direction. No one saw the train strike her, and it was not known that she had been killed until the next morning, when her body was found east of the track and about seventy-five feet south of the crossing. The evidence is conflicting as to the rate of speed at which the train was running at the time it crossed Main street, some of the plaintiff's witnesses fixing it at from fifty to sixty miles an hour, while the engineer in charge of the train swore that he was running about thirty-five or forty miles per hour. The evidence as to whether any signal was given upon approaching the crossing is also contradictory. Several citizens who saw the train pass testify that no bell was rung nor whistle sounded, while the engineer and fireman testified to the contrary. The circumstances proved satisfactorily show that the deceased was killed by that evening train. There can be no doubt that the evidence upon these counts was amply sufficient to justify the court in refusing, at the instance of the defendant, to instruct the jury to find for it, nor that, in view of the conflict in the evidence on these counts, the judgment of the Appellate Court is final and conclusive in favor of the plaintiff.

The contention that evidence introduced on behalf of the plaintiff as to the careful habits of the deceased was incompetent and improperly admitted over the defendant's objection is without force. As we have already stated, no one witnessed the accident, and the testimony objected to was competent as tending to show that the deceased was at the time in the exercise of due care. Due care may be shown by circumstances as well as by direct testimony, and the fact that the deceased, at the time of the accident, was not guilty of negligence may be shown by her habits and by what are known to be the instincts of self-preservation in persons possessed of their natural faculties and who are ordinarily sober and careful of their personal safety. (*Chicago, Burlington and Quincy Railroad Co.* v. *Gunderson,* 174 Ill. 495; *Illinois Central Railroad Co.* v. *Prickett,* 210 id. 140.) It seems to be claimed on behalf of appellant that the evidence of the engineer in charge of the train is to the effect that he saw the accident, and therefore the evidence introduced on behalf of the plaintiff as to the careful habits of the deceased became incompetent. At the time plaintiff's evidence was offered the engineer had not testified. If it was insisted that his evidence rendered that of plaintiff incompetent, counsel for defendant should have moved to exclude plaintiff's testimony, but this was not done. But the evidence of the engineer did not render the testimony incompetent. He did not claim to have seen the accident, but simply testified that he saw a woman approaching the crossing and saw her within a few feet of the east rail of the track, and that upon sounding the alarm she stopped, and that he did not know of her being struck, did not stop the train, and only heard of the fatal accident the next morning. We do not think the trial court was in error in admitting the testimony.

It is earnestly insisted on behalf of the appellant that the trial court erred in admitting in evidence proof of an ordinance of the village of Braceville regulating the speed of trains within its corporate limits. This proof on behalf of

the plaintiff consisted of a book or pamphlet of ordinances purporting to have been printed by authority of the village board. Treating that proof as *prima facie* evidence of the passage and publication of the ordinance, the defendant attempted to overcome the same by introducing the journal of the proceedings of the village board. It is not denied, as we understand, that the proof offered by the plaintiff, under the provisions of section 65 of the City and Village act, was competent and in every way fulfilled the requirements of that section of the statute. Counsel for appellee insisted that such proof not only proved *prima facie* the legal passage and publication of the ordinance, but that such proof was conclusive and could not be contradicted by the defendant. In this we think they are in error. While the statute makes such proof competent, we do not understand that it may not be contradicted by other competent evidence showing that the ordinance was never, in fact, legally passed. The evidence seems to have been introduced in an irregular manner. It appears that after the plaintiff had made his proof, as above stated, the jury were sent out and the defendant offered to the court proof to identify the journal of the proceedings of the village board and then offered that book in evidence, and especially pages 278 to 286, inclusive, showing proceedings at meetings of the village trustees on February 2 and February 9, 1885, which, it is claimed, shows that no meeting was held on February 4, 1885, and that the revised ordinances were adopted on February 2, 1885, and that chapter 30 thereof, as adopted, was upon the subject of rules, and not of railroads, as appeared from the printed book of ordinances. The journal shows a meeting of the village board convened on February 2, 1885, for the purpose of considering the revised ordinances; that all the members were present, and that a motion was carried to take up and adopt the ordinances chapter by chapter. It then gives the number of each chapter, beginning with chapter 1, and in most instances enumerates the number of each section in that chap-

ter. It gives the yeas and nays upon the adoption of each chapter and shows each chapter adopted. In a few cases the number of sections in a chapter is not given. After the adoption of chapter 1 an adjournment to one o'clock is shown. There is no reference in this journal to chapter 15, but chapter 16 follows immediately after chapter 14, and the enumeration then proceeds in regular order. This makes the last chapter 39, whereas there are only chapters 1 to 38, inclusive, in the published book. But, as a matter of fact, there are only thirty-eight chapters shown to have been adopted by the journal. The only case in which the journal shows the subject of the chapter is chapter 30, which, according to it, related to rules, while in the printed book chapter 30 relates to railroads and chapter 31 to rules. The number of sections in a chapter bearing a given number, as stated in the journal, does not always agree with the number of sections in the chapter bearing that number in the printed book. The error in omitting to number chapter 15 in the journal does not explain all the apparent discrepancies. At the close of the proceedings is a unanimous vote in favor of the report of the committee, which, fairly, means the adoption of the ordinances as an entirety. We think the Appellate Court properly held that the journal offered in evidence by the defendant did not disprove the passage of the ordinance, but, at most, merely tended to show that the records of the village board were incorrectly or carelessly kept, the burden being upon the appellant to overcome the *prima facie* case made by the plaintiff. It was not sufficient for it to merely cast doubt or suspicion upon the validity of the ordinance, but to disprove its validity by showing that, as a matter of fact, it was never passed. If regularly passed, the fact that the journal incorrectly gave the date of its passage or the title of the chapter in which it was included would not render it invalid.

Again, the village clerk, as shown by his testimony introduced before the court, shows that he had only been in office about one year, and while he testified that the book of-

fered as the journal was the only record of the proceedings of the board of trustees, he also stated, on cross-examination, that he was not certain as to that fact, and it can readily be seen that without a special examination of the books kept by his predecessor or predecessors he would have no more knowledge as to whether the journal in question was the only record of the proceedings than would any other person, and he testified that he had made no such examination. Section 11 of article 6 of the City and Village act provides that the clerk shall record in a book to be kept for that purpose, all ordinances passed by the board of trustees, and at the foot of the record, on each ordinance so recorded, he shall make a memorandum of the date of the passage and of the publication or posting of such ordinance, which record and memorandum, or certified copy thereof, shall be *prima facie* evidence of the passage and legal publication or posting of such ordinances for all purposes whatsoever. There is an entire absence in this record of proof of a failure of the clerk to comply with this provision of the statute, and the presumption must be that he did his duty and recorded the ordinance as passed. If he performed his duty in that regard his certificate would be *prima facie* evidence of the passage of the ordinances. The proof, therefore, introduced before the court did not show that the revised ordinances as published were not passed as shown in the pamphlet introduced in evidence by the plaintiff.

The method of introducing the evidence on this question was peculiar. As heretofore stated, all the proof offered by the defendant was to the court, out of the hearing of the jury. During that hearing before the court certain oral testimony was offered by the plaintiff to explain the passage of the ordinances and the apparent contradiction in dates, numbers and titles of the chapters of the ordinances. This testimony, in part at least, if it had been admitted to the jury by the plaintiff over the objection of the defendant, would have been incompetent, though, in so far as it did not con-

tradict the record but simply explained it, it may not have been objectionable. But aside from the consideration of that question of its competency, after the jury were returned into court and the plaintiff renewed his offer of the book of ordinances, the defendant renewed its objection, and the abstract recites that it, "in support of the objections, offers all the evidence heretofore offered to the court therein," so that if the oral testimony went to the jury at all it must have been at the instance of the defendant, and it cannot therefore now object. However, that testimony, in any view of the case, was not of such controlling importance as that it ought to work a reversal of the judgment below.

The circuit and Appellate Courts did not commit error in holding that plaintiff proved the passage and publication of the ordinance regulating the speed of the trains through the village and that the defendant failed to overcome that proof, and that no reversible error was committed in the admission of oral testimony.

Some objection was made in the Appellate Court of the ruling of the trial court in admitting in evidence on behalf of the plaintiff certain photographs, but that objection does not seem to be renewed here.

The contentions that the evidence shows that the deceased was guilty of contributory negligence, and that the damages allowed are excessive, cannot be considered in this court. The judgment of the Appellate Court is final as to these facts.

We have discovered no reversible error in this record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Farmer and Vickers, JJ., took no part in the decision of this case.