## UNION OIL CO. v. CITY OF PORTLAND.

(District Court, D. Oregon. August 5, 1912.)

**1.** CONSTITUTIONAL LAW (§ 81*)—EXERCISE OF POLICE POWER.

The right to exercise the police power is a continuing one, and private property and business are always subject to such right.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

**2.** CONSTITUTIONAL LAW (§ 70*)—JUDICIAL POWER—EXERCISE OF POLICE POWER—REVIEW BY COURTS.

The courts will not inquire into the expediency of legislation passed in the exercise of the police power, nor the reasons which prompted its adoption, so long as it appears that the legislative authority acted in good faith, in the exercise of a reasonable discretion, and not arbitrarily; nor will they overthrow such legislation merely because they differ with the lawmaking power as to its efficiency, when opinion is divided on the question.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

**3.** CONSTITUTIONAL LAW (§ 296*)—MUNICIPAL CORPORATIONS (§ 622*)—"DUE PROCESS OF LAW"—LEGALITY OF ORDINANCE.

The city council of Portland, Or., passed an ordinance designating certain locations in the city where fuel oil might be stored for sale and distribution, and prohibiting its storage for such purposes elsewhere. After complainant, an oil company, had purchased a tract of land in one of the localities where storage was permitted and prepared to build a storage plant thereon, the council repealed the ordinance and passed another, which left complainant's property within a restricted district. A hearing was given all parties, and there was no evidence that the council acted arbitrarily, or otherwise than in good faith. *Held*, that it was within the power of the council to reconsider the question after the passage of the first ordinance, and that the new ordinance was not unconstitutional as depriving complainant of its property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 825–829, 836–838, 840–846; Dec. Dig. § 296;* Municipal Corporations, Cent. Dig. § 1370; Dec. Dig. § 622.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227–2256; vol. 8, p. 7644.]

In Equity. Suit by the Union Oil Company against the City of Portland. On final hearing. Decree for defendant.

Cake & Cake, of Portland, Or., for complainant.

Frank S. Grant, City Atty., and L. E. Latourette, Deputy City Atty., both of Portland, Or., for defendant.

BEAN, District Judge. The complainant is now, and for some time has been, engaged in the sale and distribution of crude petroleum and its products for fuel purposes in the city of Portland. Prior to June 27, 1911, it had a storage and distributing plant on East Water street, which, on the day named, was destroyed by fire under such circumstances and with such results as to cause public discussion of the question whether the storage of oil for sale should be permitted

at all within the corporate limits of the city. A committee of the council was thereupon appointed by the mayor to examine into the question and report by ordinance. On August 30th the committee reported to the council and recommended the passage of an ordinance particularly describing certain locations in the city where oil might be stored for sale and distribution, defining the character of structures that might be erected therein, and prohibiting the storage of fuel oil elsewhere in larger quantities than 50 gallons, except by gas companies for the manufacturing of illuminating gas. The ordinance was immediately placed on its final passage, and adopted without discussion or a dissenting vote.

Fifteen days before the committee made its report, or the ordinance had been drafted, the complainant secured an option to purchase a tract of land in South Portland, subsequently described in the ordinance, and soon after its passage and approval took up such option, obtained a building permit from the city authorities, and purchased a portion of the material for its plant. When, however, it began grading the ground preparatory to the erection of its buildings and tanks, the citizens residing in the neighborhood first learned that the land purchased by it was one of the permitted districts, and were very much agitated thereby. They immediately brought the matter to the attention of the council, and it, after due consideration, repealed the ordinance and revoked the building permit previously issued to the complainant. At the same time one of the standing committees was directed to prepare and report to the council a new ordinance regulating the storage of oil within the city. This committee, after considering the matter and giving interested parties an opportunity to be heard, reported an ordinance which was adopted in January, 1912, and is known as Ordinance No. 24,652. This ordinance permits the storage of oil for fuel purposes in buildings for the use of such buildings, and the then existing storage facilities maintained for private use by railroad, gas, and power companies, to the extent of the reasonable requirements of such companies for the operation of their respective railroads and plants, but prohibits storage for the purpose of distribution, except by special permit of the council, and then not within 500 feet of any adjacent building, or within 3,000 feet of the harbor line, or 1,000 feet of any other distributing plant. The property purchased by complainant, and upon which it proposed to erect its plant, is within the restricted district, and it therefore seeks to enjoin the city from enforcing the ordinance repealing the districting ordinance and Ordinance No. 24,652, on the ground that they deprive it of its property without due process of law and deny it the equal protection of the law.

By its charter the city is given authority to regulate or prohibit the storage, manufacture, or sale of oil within the city limits. Section 73, subd. 36. The storage of fuel oil and its products is therefore within the police power of the city, and a proper subject for municipal regulation or prohibition. The determination of the city as to what is a proper exercise of its powers in this respect is, of course, not final or conclusive, but is subject to the supervision of the courts.

and will be disregarded when there has been an arbitrary and unwarranted interference with constitutional rights. Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169. The presumption, however, is in favor of the validity of the action of the council. The only question the courts will consider is whether the means adopted are reasonably adequate to the accomplishment of the purpose, or whether the police power has been used for the protection of the public, or for the mere spoliation and destruction of private property and rights; in short, whether the municipal authorities, under the guise of protecting the public interests, have arbitrarily interfered with private business, or imposed undue or unnecessary restrictions upon lawful occupations. As said by Mr. Justice Brown in Holden v. Hardy, 169 U. S. 366–398, 18 Sup. Ct. 383, 390 (42 L. Ed. 780):

"The question in each case is whether the Legislature has adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression or spoliation of a particular class."

[1] Now, the evidence in this case does not show that the council, in repealing the districting ordinance, acted arbitrarily and not in the exercise of a reasonable discretion. On a reconsideration, it found that the ordinance was adopted without full information as to the facts, and that it was a mistake, and hence corrected the error by repealing it. The contemplated construction of complainant's plant was no doubt the immediate cause of repeal; but it was not done to oppress or discriminate against the complainant, but for what the council deemed the public welfare. By the passage of the ordinance the council did not exhaust or bargain away the police powers of the city, or deprive itself of the right to repeal such ordinance if, in its judgment, the public interest required. Nor was it estopped from doing so because the complainant had taken up an option previously acquired and expended money in making preparations for the erection of its plant within the territory described therein. The right to exercise the police power is a continuing one, and private property and business is always subject to a legal exercise thereof. Portland v. Cook, 48 Or. 550, 87 Pac. 772, 9 L. R. A. (N. S.) 733; City of Portland v. Meyer, 32 Or. 368, 52 Pac. 21, 67 Am. St. Rep. 538.

[2] The courts will not inquire into the expediency of legislation of this kind, nor the reasons which prompted its adoption, so long as it appears that the legislative authority acted in good faith, in the exercise of a reasonable discretion, and not arbitrarily; nor will they overthrow such legislation merely because they may differ with the lawmaking power as to its efficiency, when opinion may be divided on that question. Laurel Hill Cemetery v. San Francisco, 216 U. S. 358, 30 Sup. Ct. 301, 54 L. Ed. 515.

[3] I am clearly of the opinion, therefore, that the complainant was not deprived of its property without due process of law, within the meaning of the federal Constitution, by the repeal of the districting ordinance. Nor do I think Ordinance 24,652 is open to the objection that it denies the complainant the equal protection of the law. The

equal protection clause of the fourteenth amendment does not take from the states the power to classify in the adoption of police laws. On the contrary, it admits the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore purely arbitrary. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that will sustain it, the existence of that state of facts at the time the law was enacted must be assumed. The burden is on one who assails the classification to show that it does not rest upon any reasonable basis, but is essentially arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369. The ordinance in question, although somewhat indefinite, divides the storage of oil into two classes: (a) For private use; and (b) for general sale and distribution—and makes regulations applicable to all parties of the same class under like circumstances. This, I take it, is a classification resting upon a reasonable basis, and one the council could legally make. Every presumption is in favor of the ordinance, and this continues until the contrary clearly appears. Powell v. Penn., 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253.

There was evidence tending to show that there is no more danger to the public from the storage of oil for sale and distribution than for private use; but whether such storage and the use made of the oil differs in degree to such an extent as to require different regulations is, in my judgment, a question of fact, and of public policy, which belongs to the legislative, and not the judicial, department. If the regulations adopted by the city are unwise, or unnecessarily oppressive to those engaged in the sale and distribution of oil, their appeal must be to the legislative branch of the government, and not to the courts. Jacobson v. Mass., 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765.

The complaint is dismissed.