(No. 6833. September 25, 1941)

CITY OF IDAHO FALLS, a municipal corporation, Respondent, v. J. L. GRIMMETT, WESTON SIMPSON and EAST SIDE CABINET COMPANY, a corporation, Appellants.

(117 P. (2d) 461)

92 

 

Alvin Denman, for Appellants.

Ralph L. Albaugh, for Respondent.

AILSHIE, J.—Respondent, a municipal corporation, is a city of the second class. About August 18, 1928, Ordinance No. 431 was enacted by the mayor and city council, by the terms of which the city was divided into five zoning districts as follows: "A" residence zone; "B" commercial zone; "C" industrial zone; "D" quiet zone; and "E" unrestricted zone.

About December 6, 1934, appellant Grimmett, being the owner of Lots 47 and 48, Block 53 of Crow's Addition to respondent city, being in residence zone "A," made application in writing to the mayor and council, "for a permit to construct a Contractor's Workshop, between 14th and 15th on Lee," the lots above mentioned. The building inspector's report gave the plan specification as "Widening present shop by moving south out from building—20'. All walls to be stuccoed." The carbon copy thereof has the following additional sentence written, "This is to be used for his own work only." Mr. Berg, the building inspector, testified that these words were added, and the council ordered this addition made to the permit, "Because it was upon that condition that the City Council passed the permit." However, this evidence was ordered stricken. Permit issued to appellant Grimmett, approved December 6, 1934, and thereafter Grimmett enlarged the building; the actual width of which, when completed, was 26 feet, six feet wider than the permit specified. Appellants contended that the following ma-

chinery would be used in the shop: "three-phase electric power tools such as an emery stone, circle saws, sanding machine, jointers, surfacer, band saw, rip saw, sticker, chisel mortiser and sh[o]per;" that a special transformer was installed at great expense to appellants, making it possible to operate the electric power tools.

In the month of March, 1937, appellants, Grimmett and Simpson, organized a corporation, known as the East Side Cabinet Company, owning more than 90% of the outstanding capital stock. They have, ever since that time, and now are, operating and conducting the business as a corporation.

October 26, 1939, complaint was filed by the city against appellants, praying for the issuance of an injunction, restraining and enjoining the defendants (appellants) from maintaining or operating a planing mill, etc., or using the premises for any purpose other than a "contractor's work shop for the storage of hand tools and for working lumber by hand." The cause was heard December 19, 1939. Findings of fact and conclusions of law were made and a decree was entered June 17, 1940, ordering "that a permanent injunction issue out of this Court addressed to each and all of the above named defendants, to-wit: J. L. Grimmett, Weston Simpson and the East Side Cabinet Company, a corporation, and their agents, servants and employees and all others acting in their aid or assistance, or in aid or assistance, or in conjunction with either or any of them, forever restraining and enjoining them from maintaining or operating on Lots 47 and 48, Block 53 Crow's Addition to the City of Idaho Falls, Idaho, any electric motors or power-driven machinery and equipment for the purpose of sawing, working or finishing lumber and from storing lumber on said premises," from which decree defendants have appealed.

The assignments of error reduce themselves to two propositions, first, that the complaint was insufficient to state a cause of action for injunction, and, second, that the court erred in admitting in evidence ordinance No. 431 of the city of Idaho Falls; and that the evidence was not sufficient to support the findings and judgment.

These assignments are so intimately related that we shall discuss them all as one proposition, since the proofs follow and sustain the complaint. It is first contended that the preliminary proofs submitted were not sufficient to show that the ordinance had been duly and regularly passed by the city council.

Sec. 49-1805, I. C. A., prescribes the method of proof of city ordinances and provides that they "may be proved by the certificate of the clerk under the seal of the city or village, and when printed or published in book or pamphlet form by authority of the city or village, shall be read and received in evidence in all courts and places without further proof."

Here, the printed ordinance (No. 431) was duly certified by the city clerk and offered and admitted in evidence. This was a compliance with the statute. If any preliminary matter had been overlooked or neglected, in the adoption of the ordinance, pleading and proof of such omission or neglect devolved upon the party resisting the admission of the ordinance in evidence. (*Merced Co. v. Fleming*, 111 Cal. 46, 43 Pac. 392.)

It is contended by appellant that the city council failed to appoint a Zoning Commission, as required by sec. 49-406, I. C. A., to make investigation and recommend boundaries of various districts, and hold public hearings thereon, before submitting a report and the passage of the ordinance; and for that reason, the ordinance was void. The record does not support this contention. The record shows that the council appointed its ordinance committee, to make investigation and report as a Zoning Commission, and that they did do so, gave notice, and held a hearing on their report, all of which was done before the ordinance was introduced. We find nothing in the statute requiring the commission to consist of persons not members of the council; and, indeed, we can see no reason for such a requirement. Members of the city council are more likely to give such a matter careful consideration than are non-members of the council.

It is seriously contended by appellant, that the permit having been granted, and appellant having made expenditures in building and repairs in pursuance of the

authority of the permit, the city is now estopped from withdrawing its permission or enjoining the further exercise of any privileges thereunder.

The validity of zoning ordinances, passed in conformity with legislative authority, is now generally recognized as a proper and legitimate exercise of the police power. (*Zahn v. Board of Public Works,* 195 Cal. 497, 234 Pac. 388, 394; affirmed, 274 U. S. 325, 47 Sup. Ct. Rep. 594, 71 L. Ed. 1074; *Ex Parte Hadacheck,* 165 Cal. 416, 132 Pac. 584, L. R. A. 1916B, 1248; *Harrigan & Reid Co. v. Burton,* 224 Mich. 564, 195 N. W. 60, 62, 33 A. L. R. 142; *Maguire v. Reardon,* 41 Cal. App. 596, 183 Pac. 303; affirmed, 255 U. S. 271, 41 S. Ct. 255, 65 L. ed. 625; see, also, *Beem v. Davis,* 31 Idaho 730, at 736, 175 Pac. 959.)

"It must be conceded that, where a given statute admittedly presents a proper field for the exercise of the police power, the extent of its invocation and application is a matter which lies very largely in legislative discretion. (*Carter v. Harper,* 182 Wis. 148, 196 N. W. 451.)" [33 A. L. R. 269.]

(*Zahn v. Board of Public Works, supra,* at p. 395.) Every presumption is to be indulged in favor of the exercise of that discretion, unless arbitrary action is clearly disclosed. *Building Inspector of Lowell v. Stoklosa,* 250 Mass. 52, 145 N. E. 262, 264; *Dobbins v. City of Los Angeles,* 195 U. S. 223, 25 S. Ct. 18, 49 L. ed. 169; *Miller v. Board of Public Works,* 195 Cal. 477, 234 Pac. 381, 385; 38 A. L. R. 1479; *Mehlos v. City of Milwaukee,* 156 Wis. 591, 146 N. W. 882, 51 L. R. A., N. S., 1009, Ann. Cas. 1915C, 1102.

It should be remembered that the adoption of zoning ordinances, and the regulation of the construction of buildings in various zones or districts, is the exercise of the *police power* of the municipality and is *purely governmental. State v. Twin Falls, etc., Water Co.* 30 Idaho 41, 70, 75, 166 Pac. 220; 3 McQuillin, Munic. Corp., sec. 1043, pp. 348, 349; *Beem v. Davis,* 31 Idaho, 730, at 736, 175 Pac. 959; *Maguire v. Reardon, supra; City of Stockton v. Frisbie & Latta,* 93 Cal. App. 277, 270 Pac. 270, 276;

*Wikstrom v. City of Laramie,* 37 Wyo. 389, 262 Pac. 22, 23.

■ It has been frequently held that a municipality may be estopped or required to respond in damages for unlawful conduct in the exercise of its proprietary or business powers. (*Boise City v. Wilkinson,* 16 Idaho 150, 174, 102 Pac. 148; *Robinson v. Lemp, Executor,* 29 Idaho 661, 669, 161 Pac. 1024; *Boise Development Co. v. Boise City,* 30 Idaho 675, 688, 167 Pac. 1032; *Willson v. Boise City,* 20 Idaho 133, 144, 117 Pac. 115, 36 L. R. A., N. S. 1158.) The latter rule, however, has not been extended to the exercise of the police power. "The police power cannot be bartered away even by express contract; ... since it immediately concerns the safety of persons and property." (*Maguire v. Reardon, supra; Union Oil Co. v. City of Portland,* 198 Fed. 441, 443.) That power reposes in the public.

■ Apparently the real controversy arose in this case over, either a misunderstanding between the appellants and the city authorities, as to the purpose and extent of the permit originally granted or the use to which the structure and surrounding grounds were to be subsequently devoted. It seems quite clear that originally, when the application for permit was made, the city authorities understood that the permit was being granted for the construction of only "a Contractor's Workshop." However, between the time of the granting of the permit and the commencement of this action, it had grown and expanded into a *"planing mill"* and *lumber yard.* The trial court found:

"7. That thereafter, and during the year 1935, said Grimmett constructed a building on said premises and installed in said building numerous electric motors, band saws, ripsaws, circle saws, a morticer, a shaper, surfacer, joiners, and other power driven machines for sawing, planing and working lumber, and thereafter used and operated and still continues to use and operate said electric motors, saws, machinery, and equipment for sawing, working and finishing lumber.

. . . . . . . . .

"9. That in addition to the use of said premises as aforesaid, said defendants, for many years last past, have piled and stored lumber on that part of said premises not occupied by said building situate thereon.

. . . . . . . . .

"12. That said building, machinery and equipment constitutes, and is a planing mill and is not a contractor's workshop."

"13. That the maintenance of said planing mill and the storing of lumber on said property constitutes a conversion of the use of said property from residential to business uses and constitutes, and is a violation of the provisions of said Ordinance No. 431."

There is evidence supporting these findings.

In the meanwhile, appellants had constructed many residential buildings worth thousands of dollars, in the immediate vicinity of this shop, and they have been occupied by families, some of whom are now disturbed by the operations of the machinery in this shop or plant and the unsightly appearance of the lumber yard.

Reference to the dictionaries and lexicons discloses a wide range of definitions for the word "workshop," varying all the way from a place "in which no machinery moved or used by any mechanical power is used" (Webster's New International Dic.) to "a building where machinery is employed in the work of fabrication; a factory or manufacturing establishment." (71 C. J., p. 1616.) But it evidently passes beyond the limits, by any definition, of a "contractor's workshop" when it gets to be a "planing mill" and lumber yard, as found by the trial court. The ordinary implication of the word "workshop," to the average person, would hardly comprehend a planing mill and various lathes, drills, saws, motors, and other electrically-driven machines and appliances used in a manufacturing plant turning out finished lumber products.

When appellants procured the permit, they knew, or were chargeable with knowledge, that the Zoning Ordinance was in force and that the city officers and agents had no authority to disobey or disregard it. (Mc-

*Curley v. City of El Reno,* 138 Okla. 92, 280 Pac. 467, 472; 119 A. L. R., 1514 note; *Lipsitz v. Parr,* 164 Md. 222, 164 Atl. 743, 746; *Meltzer v. City of Chicago,* 152 Ill. App. 334, 345.) If, however, they procured the permit under the special provision and exception contained in sec. 9[1] of the ordinance, as now suggested, it was incumbent on them to plead and prove the exception made in their behalf and compliance therewith on their part; and that the authority had not been withdrawn or revoked in a lawful manner. 2 Dillon, Munic. Corp., sec. 649; 3 McQuillin, Munic. Corp., (2d ed.), sec. 906, p. 5, and sec. 908; *Allen v. City of Los Angeles,* 210 Cal. 235, 291 Pac. 393; *State ex rel Dawson v. City of Atchison,* 92 Kans. 431, 140 Pac. 873, Ann. Cas. 1916B, 500; *Chicago & Alton R. Co. v. Wilson,* 225 Ill. 50, 80 N. E. 56, 116 Am. St. 102, 80 N. E. 56; *Union Oil Co. v. City of Portland,* 198 Fed. 441, 444; *Harrigan & Reid Co. v. Burton,* (Mich.) supra.

The judgment is affirmed with costs to respondent.

Givens and Holden, JJ., concur.

Budge, C.J., did not participate.

MORGAN, J., concurring—At the time of the oral argument of this case, I entertained the view that injunctive relief was not available to respondent. Since then I have reached the conclusion my opinion is not sustained by law, and I therefore concur in the affirmance of the judgment.

---

[1] "When, in its judgment, the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, or when there are practically difficulties or unnecessary hardships in carrying out the strict letter of this ordinance, the City Council may, in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purpose and intent."