Appeal of John L. PIERCE from Ruling of Board of Adjustment of City of Tulsa, Oklahoma.

No. 38573.

Supreme Court of Oklahoma.

Oct. 27, 1959.

Rehearing Denied Dec. 22, 1959.

Darven L. Brown, City Atty., and Charles E. Norman, Atty., for Board of Adjustment, Tulsa, for plaintiff in error.

T. Austin Gavin, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Beginning in 1943, John L. Pierce, who appears herein as defendant in error, but will hereinafter be referred to as applicant, has owned a parcel of real estate in Tulsa, Oklahoma, consisting of a lot with street frontage of 50 feet and depth of 85 feet, and a two-story, 4-family, or 4-unit, frame apartment building thereon. He has been living in one of the units, or apartments, and renting to other persons the other three apartments. The property is located in what is designated as a "U-2 A Zone" district. The uses of property located in such district are described by said City's Ordinance No. 7937, which was enacted in 1956. The only multiple family·dwellings, or buildings, said ordinance authorizes in such district are those "designed and built to accommodate not more than four family units * * *". The ordinance further states, among other things: "* * * pro-

vided that no such building shall be erected on a lot or tract of land having less than 50 feet frontage and a minimum lot area of 4,000 square feet per family unit * *". Being desirous of constructing an additional building on the above mentioned lot to contain utility and storage space for his tenants in the existing building and to also contain an apartment he could occupy (thus making available for rental to others the one he then occupied) appellant made oral application to Mr. H. W. Goodwin, Tulsa's Building Inspector, for a building permit to erect a proposed additional building on the lot. Goodwin refused to issue the permit. Later, appellant contacted a building contractor named A. C. Futral, told him of his desire to erect the building; and Futral thereafter obtained for him from one W. R. Thompson, deputy building inspector, a building permit dated October 4, 1957, which described the "Nature of Work" (to be performed under it) as a frame addition to the rear of dwelling "2 story—no expansion of living space." The permit described the use to be made of the additional building only as "utility and household storage."

The appellant then obtained a loan of $4,000 from a Tulsa bank to defray the cost thereof, and he and Futral started construction of the building in controversy here, designed not alone to provide utility and storage space for his other tenants, but to include, in addition thereto, an apartment for him to live in. When the type of structure that was being built under the purported authority of the above described building permit came to the notice of one of the building inspector's "field" men, he asked the Inspector, Goodwin, to "look up the building permit and see what he (Pierce) was supposed to build." When this was done and the permit was found to be as above described, Goodwin went to the scene of the construction and there saw that the unfinished building was plumbed for an apartment on its second floor. As a result, an order went out from Goodwin's office stopping the construction on December 4, 1957. On December 11, 1957, Tulsa's Board of Adjustment rejected an appeal to it by the applicant, from the Building Inspector's decision, and a few days later, applicant applied to said Board to grant an exception to, and/or variance of, Ordinance No. 7937, supra, therein revealing that he proposed to use part of said building as a living unit. After a hearing before it on said application, the Board determined that "no valid hardship existed * * *" as a ground for granting such an exception or variance and that it therefore had no jurisdiction to take such action. Thereafter, the applicant appealed to the District Court of Tulsa County, hereinafter referred to as the "trial court", and, after a hearing there in the nature of a trial de novo, said court entered judgment specifically finding that "a hardship exists * * * in favor of * * *" the applicant, and reversing the Board of Adjustment's decision, and granting the applicant an exception to the provisions of Ordinance No. 7937, supra, to allow him "to construct living space for an additional family unit * * *" on the lot here involved.

From said judgment, the Board of Adjustment, hereinafter referred to merely as the "Board", has perfected the present appeal.

In seeking said judgment's reversal, the Board takes the position that same is both contrary to law and unsupported by sufficient evidence. Applicant's brief concedes that use of the building in question for living quarters is in violation of Ordinance No. 7937, supra. And, instead of attempting to refute the Board's contention that the financial loss or detriment to the applicant, if not allowed to finish and use, as living quarters, that portion of the building he has plumbed and wired for such use, does not constitute "undue hardship" within that term's meaning as a ground for granting exceptions to zoning ordinances, the applicant seems to concede it, by saying: "* * * one must conclude that if one seeks to obtain an exception or variance to a zoning ordinance merely because of the fact that he will lose money, due to.

the failure to grant him an exception, he is doomed to fail." In his brief, applicant's counsel further says he has sought to point out that such "is not the case here." As we understand applicant's argument, he seems to rely exclusively on the misleading effect he apparently attributes to certain conduct of others, as hereinafter described, to supply the necessary elements of "hardship" within zoning terms of reference. In this connection, he points to his own undisputed testimony at the trial to the effect that (some time) before Mr. Goodwin, the Building Inspector, came to the site of the building and ordered the work thereon stopped, the plumbing therein had been approved by Mr. Hunt, the City's plumbing inspector, and the electrical wiring had been inspected and approved by said City's electrical inspector, after requiring certain expensive alterations to be made thereon to conform to minimum standards for house, or residence, wiring in said City. On the basis of the showing in this testimony that both the City's electrical and plumbing inspectors knew, or should have known, that a portion of the building was to be used for living quarters, and the showing that other features of the construction, such as partitions, etc., were such as to reveal to any one inspecting it, that this was one use intended for it, and of the applicant's undisputed testimony, that his own agent and building contractor, Futral, told him, after securing the building permit, that though "it called for utility and storage * * * you can use it for anything you want * * *" and "* * that is the only type permit they can issue on that type of property * * *", applicant's brief says he "was lulled into a sense of false security by the action of his contractor", the electrical and plumbing inspectors, "and the inaction of the building inspector * * *". The weaknesses in this argument are obvious. One of them, pointed out in the Board's reply brief and uncontradicted by the applicant, is that neither the electrical inspector nor the plumbing inspector is charged with enforcing the city's zoning ordinances which, under Tit. 19, O.S.Supp. § 863.18 is the responsibility of its Building Inspector. And more directly decisive of, and pertinent to, the matter is the fact that applicant cites no authority demonstrating that "unnecessary hardship" to him may be created by, or fabricated from, the acts or omissions of either of these two kinds of inspectors, and/or any representation, or misrepresentation, of his own agent, Futral. In the latter connection, see 58 Am.Jur., "Zoning", sec. 208, and as to a municipality's estoppel to enforce its zoning regulations by reason of previous conduct of its officials, notice the Annotation at 119 A.L.R. 1509, 1511, et seq. As to related matters see other Annotations at 6 A.L.R.2d 950, 976, 977, 981, and 168 A.L.R. 13. To allow a property owner to circumvent, or obtain an exception to, zoning ordinances by putting himself in a position (through his own acts and those of his agent or servant) wherein their enforcement will have a harsh, or detrimental, effect on him would practically emasculate such ordinances and make of their attempted enforcement a mere mockery. Even if the trial judge, on the basis of the testimony, believed that the applicant had no *actual* knowledge, at the time his contractor secured the building permit, of the Tulsa ordinance provisions prohibiting the erection of any additional living or family units on a lot such as his, the applicant was chargeable with knowledge of such provisions. In this connection, see City of Idaho Falls v. Grimmett, 63 Idaho 90, 117 P.2d 461, citing McCurley v. City of El Reno, 138 Okl. 92, 280 P. 467, 472, and other cases.

In accord with the foregoing, we have determined that the judgment of the trial court is contrary to the evidence and to the law applicable thereto. It is therefore reversed.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH, J., dissents.