614 P.2d 947

Coy COOPER and Wirt Edmonds,
Plaintiffs-Appellants,

v.

BOARD OF COUNTY COMMISSIONERS
OF ADA COUNTY,
Defendant-Respondent.

No. 12254.

Supreme Court of Idaho.

March 28, 1980.

On Rehearing July 22, 1980.

Richard H. Greener, Boise, for plaintiffs-appellants.

Jim C. Harris, Ada County Pros. Atty., Boise, for defendant-respondent.

DONALDSON, Chief Justice.

Plaintiffs-appellants Coy Cooper and Wirt Edmonds have an option to purchase some 99 acres of land in Ada County. When the option was acquired, the property was and remains zoned D-2. The D-2 district is a suburban zone which permits a maximum density of one home per acre. The Ada County Comprehensive Plan (hereinafter, plan) explains the purpose of the D-2 district as follows, at 28:

"The D-2 district is established to reserve agricultural lands which are likely to undergo a more intensive urban development during the planning period."

In February 1975, appellants applied for a rezone of the property from D-2 to R-5. The R-5 zone is a transitional residential zone which was created by the Ada County Zoning Ordinance (hereinafter, ordinance) after the enactment of the plan. Section 30.11 of the ordinance provides in part, that

"[o]nly those lands which have available central sewer or central water facilities or both shall be considered suitable for transitional residential use." Permissible maximum density in the R-5 zone is two residential units per acre if either a central sewage facility or central water facility is available, and three residential units per acre if both facilities are available. Central water is available to the subject property, while central sewage is not. The relevant governmental authorities have approved the use of individual septic tanks on the subject property.

The land in question is located southwest of the intersection of South Five Mile and Lake Hazel roads, in the Meridian School District. It is bordered on the east by Fox Meadow subdivision, which is zoned R-5. Hidden Valley Estates subdivision, also zoned R-5, lies in close proximity to the west. Sunset Villa subdivision, located to the south, is zoned R-2 (urban residential), with a permissible maximum density of one residential unit per 65' × 80' lot if served by central sewer and water, or one residential unit per acre if either service is unavailable. Hidden Valley Estates No. 5 subdivision is located to the southwest and is zoned R-1 (single family residential), the maximum permissible density of which is the same as that of the R-2 zone. Fox Ridge Estates subdivision lies to the southeast and is zoned R-5.

The Ada County Planning and Zoning Commission heard appellants' application March 10, 1975. While the planning and zoning staff recommended denial of the application, the Planning and Zoning Commission recommended its approval to respondent Board of Ada County Commissioners (hereinafter, board). Respondent board, after valid notice, held a public hearing on the matter April 7, 1975, and deferred its decision until a later time. Thereafter, on May 7, 1975, respondent board met again to reach its decision. Although no public notice of this second meeting was given, appellants knew it was to be held and were present. Also present were members of the planning and zoning staff, the Chief Civil Deputy of the Ada County Prosecuting Attorney's Office, and the news media, among others. At this meeting, members of the planning and zoning staff spoke against granting the requested rezone and presented information concerning overcrowding in the Meridian School District. No transcribable record was kept of any of the proceedings.

The following day respondent board sent appellants a letter informing them of the board's action on their application. It read as follows:

"May 8, 1975

"Coy Cooper and Wirt Edmonds
2004 Northcrest Drive
Boise, Idaho
Re: 75–17–ZC
Gentlemen:
This is to advise you of the action taken by the Board of Ada County Commissioners on the above entitled zone. The Board has voted to deny the change of zone from D-2 to R-5 because of items 1, 2, 3 and 4 and Agricultural Policies No. 4 and No. 5 and also because of the school district.
If you have any questions, please contact this office.
Sincerely,
BOARD OF ADA COUNTY COMMISSIONERS"

The letter was signed by the three commissioners. Enclosed were copies of two pages of the planning and zoning staff's report to the Planning and Zoning Commission. The recommendation was as follows:

"Staff must recommend denial of this application for the following reasons:

1. The application does not comply with Agricultural Policy # 4. No special study has been made in this area to determine what is prime agricultural land.

2. The application does not conform to agriculture policy # 5. No special study has been made to determine whether public sewer can be obtained in the future. Further, no sewer is planned during the current planning period for this area.

3. The application does not comply with Residential Policy # 5. No public sewer facility is planned during current planning period for this area.

4. The Meridian School District generally and Lake Hazel school in particular are already over burdened by excess enrollment. This development would add to this problem."

Appellants received no other communication or document concerning the board's disposition of their application.

Thereafter, appellants brought suit in district court appealing the decision of the board and seeking a writ of mandate compelling the board to grant the rezone. The court evidently did not consider the prayer for writ of mandate but conducted the appeal from the board's decision as a trial de novo. Characterizing the board's action as legislative, the court reviewed it solely on the basis of whether the board acted arbitrarily or capriciously in denying the application. Finding it did not, the court affirmed the board's action. Appellants now appeal the decision of the district court.

Appellants contend the procedures followed by respondent board in denying their application for rezone were fundamentally unfair. They cite as the major failings (1) the board's failure to give public notice of the second meeting; (2) presentation to the board at the second meeting of evidence concerning crowding in the Meridian School District, which evidence appellants had no opportunity to rebut due to absence in the comprehensive plan and original ordinance of any mention of school districts as a criteria in the designation of property zones; (3) partiality of the board in allowing members of the planning staff to advocate against the application at the second meeting; (4) absence of a transcribable record of the evidence received at the public hearing and at the subsequent meeting; and (5) failure of the board to enter written findings of fact and the conclusions upon which it based its decision to deny the application. In denying appellants relief, the trial court stated:

"Members of a legislative body in enacting legislation do not have to base the reasons for their decisions entirely on materials received at public hearings. Legislative bodies can be lobbied. There are no limitations on evidence. Decisions can be based on hearsay information, intuitive . . . reaction or the color of the advocate's eyes. This fact of life eliminates most due process considerations."

■ Appellants contend the court erred in characterizing the action of the board in this case as legislative. In their view, the application for *rezone* of specific property required a decision in the nature of an administrative, quasi-judicial determination of individual rights. We agree. It is beyond dispute that the promulgation or enactment of general zoning plans and ordinances is legislative action. *Dawson Enterprises, Inc. v. Blaine County*, 98 Idaho 506, 567 P.2d 1257 (1977); *Harrell v. City of Lewiston*, 95 Idaho 243, 506 P.2d 470 (1973); *Cole-Collister Fire Protection District v. City of Boise*, 93 Idaho 558, 468 P.2d 290 (1970); *Idaho Falls v. Grimmett*, 63 Idaho 90, 117 P.2d 461 (1941). However, appellants urge that a crucial distinction be drawn between a zoning entity's action in *enacting* general zoning legislation and its action in *applying* existing legislation and policy to specific, individual interests as in a proceeding on an application for rezone of particular property. We find merit in appellants' argument and the following from an Illinois case:

"It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi-judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government." *Ward v. Village of Skokie*, 26 Ill.2d 415, 186 N.E.2d 529, 533 (1962) (Klingbiel, J., specially concurring.)

Oregon, rejecting the view that all decision-making action of a zoning board is

legislative, stated in *Fasano v. Board of County Com'rs*, 264 Or. 574, 507 P.2d 23, 26 (1973):

> "At this juncture we feel we would be ignoring reality to rigidly view all zoning decisions by local governing bodies as legislative acts to be accorded a full presumption of validity and shielded from less than constitutional scrutiny by the theory of separation of powers. Local and small decision groups are simply not the equivalent in all respects of state and national legislatures. . . . "

In delineating the distinction between legislative and judicial zoning action, the Court stated:

> "Ordinances laying down general policies without regard to a specific piece of property are usually an exercise of legislative authority, are subject to limited review, and may only be attacked upon constitutional grounds for an arbitrary abuse of authority. On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial authority and its propriety is subject to an altogether different test. . . .
>
> " 'Basically, this test involves the determination of whether action produces a general rule or policy which is applicable to an open class of individuals, interest, or situations, or whether it entails the application of a general rule or policy to specific individuals, interests, or situations. If the former determination is satisfied, there is legislative action; if the latter determination is satisfied, the action is judicial.'
>
> "We reject the proposition that judicial review of the county commissioners' determination to change the zoning of the particular property in question is limited to a determination whether the change was arbitrary and capricious." *Id.*, 507 P.2d at 26, 27.

The Washington Supreme Court has reached the same conclusion:

> "Generally, when a municipal legislative body enacts a comprehensive plan and zoning code it acts in a policy making capacity. But in amending a zoning code, or reclassifying land thereunder, the same body, in effect, makes an adjudication between the rights sought by the proponents and those claimed by the opponents of the zoning change. The parties whose interests are affected are readily identifiable. Although important questions of public policy may permeate a zoning amendment, the decision has a far greater impact on one group of citizens than on the public generally." *Fleming v. City of Tacoma*, 81 Wash.2d 292, 502 P.2d 327, 331 (1972).

*See also, Snyder v. City of Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975); *Colorado Springs v. District Court*, 184 Colo. 177, 519 P.2d 325 (1974); *Donovan v. Clarke*, 222 F.Supp. 632 (D.D.C. 1963).

■ We are persuaded the cases which characterize as quasi-judicial the action of a zoning body in applying general rules or policies to specific individuals, interests, or situations represent the better rule. The shield from meaningful judicial review which the legislative label provides is inappropriate in these highly particularized land use decisions. The great deference given true legislative action stems from its high visibility and widely felt impact, on the theory that appropriate remedy can be had at the polls.

> "General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi-Metallic Investment Co. v. Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

This rationale is inapposite when applied to a local zoning body's decision as to the fate of an individual's application for rezone. Most voters are unaware or unconcerned that fair dealing and consistent treatment may have been sacrificed in the procedural informality which accompanies action deemed legislative. Only by recognizing

the adjudicative nature of these proceedings and by establishing standards for their conduct can the rights of the parties directly affected, whether proponents or opponents of the application, be given protection. *See* Booth, *A Realistic Reexamination of Rezoning Procedure: The Complementary Requirements of Due Process and Judicial Review*, 10 Ga.L.Rev. 753 (1976).

A law review article by Professor Arthur Smith points out the need for some type of control over the discretion exercised by zoning bodies in rezone cases:

"At the governing board level, a petition is considered by local elected officials. Unless constrained by standards and procedures, decisions will be largely political. The guideline for political judgments is only rarely that of previous decisions and only rarely proceeds with high regard for formal process. Rather, political judgments are a product of informal negotiation, conciliation, and compromise with a variety of end goals in mind which may or may not be cannonized in something described, for that matter, as a 'plan' or 'regulation.' Such a process is admirably suited to broadly-based decisions in which the general feeling of the populace is deciphered. When such a process determines what a particular owner may or may not do, whether an adjoining owner's expectation will be compromised, whether a community will accommodate legitimate housing needs, we may question its essential fairness. The combination of broad authority exercised on an ad hoc basis by local laymen and political officials has been described by some as chaotic." Smith, *Judicial Review of Rezoning Discretion: Some Suggestions for Idaho*, 14 Idaho L.Rev. 591, 599 (1978) (footnote omitted).

"In the absence of any more specific controlling standard than the 'arbitrary and capricious' test, regulatory decisions can be justified by an almost completely open-ended number of possible police power explanations." *Id.* at 628.

■ It is clear there is a pressing need in Idaho for established standards and procedures by which particularized land use regulation is to be administered. To allow the discretion of local zoning bodies to remain virtually unlimited in the determination of individual rights is to condone government by men rather than government by law. Accordingly, we adopt the rule which distinguishes between legislative and quasi-judicial actions of local zoning bodies and hold that the decision of the board in this case was quasi-judicial. Our prior cases, to the extent they are inconsistent with our holding today, are overruled.

■ Having determined the action of the board in denying appellants' application was quasi-judicial, we must now decide whether the proceedings before that body afforded appellants the procedural due process to which they were entitled. We hold they did not. Because the board failed to provide notice of its second meeting regarding appellants' application; because no transcribable verbatim record of the proceedings was kept; and because the board failed to make specific written findings of fact and conclusions upon which its decision was based, the decision of the board cannot stand.[1]

The judgment of the district court is reversed and the case is remanded to the Board of County Commissioners for further proceedings in accordance with I.C. §§ 67–6501 et seq. and this opinion.

Costs to appellants.

SHEPARD, McFADDEN and BISTLINE, JJ., concur.

BAKES, J., concurs in result.

## ON PETITION FOR REHEARING

DONALDSON, Chief Justice.

■ Appellants and respondent jointly petitioned for rehearing, seeking clarifica-

---

1. It is appropriate to add a word about judicial review of quasi-judicial decisions of zoning bodies. Pursuant to I.C. §§ 67–6519 through 67–6521 of the Local Planning Act of 1975, which is now in effect, judicial review shall be sought and conducted in accordance with the provisions of I.C. §§ 67–5215(b) through (g) and 67–5216.

tion as to whether the Ada County Comprehensive Plan of 1968, which was in effect when the application for rezone was made, or the Ada County Comprehensive Plan of 1977 is to be applied on remand.

Appellants contend the 1968 Plan should be applied on remand, citing *Ready-To-Pour, Inc. v. McCoy*, 95 Idaho 510, 511 P.2d 792 (1973) and *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968). Those cases dealt with applications for building permits and subsequent enactment of zoning ordinances which were not pending before the governing body when the applications were made and, if given retroactive effect, would have defeated plaintiffs' rights to the permits. In *Ben Lomond* and *Ready-To-Pour*, it was held the subsequently enacted ordinances could not be given such retroactive effect and that those effective at the time of application were determinative of plaintiffs' right to the permits. The rationale for so holding was stated in *Ben Lomond* as follows:

"[T]o hold for the City in the present case would mean that a city, merely by withholding action on an application for a permit, could change or enact a zoning law to defeat the application. It could, in substance, give immediate effect to a future or proposed zoning ordinance before that ordinance was enacted by proper procedure. The present case effectively illustrates this possibility. The language of the Wisconsin Supreme Court in holding that a city could not deny an application for a building permit on the basis of an ordinance later enacted is pertinent here:

'. . . It is apparent that the town officials were trying to keep one jump ahead of Humble and were attempting to change the rules after they had been hailed into court. . . . If the town's contention is upheld it would be tantamount to approving the proposition that *every time a party came close to successfully challenging a town and its zoning board on its zoning actions, his gains could be legislated away by the enactment of an amendment to the ordinance.*'"

(emphasis added) 92 Idaho at 602, 448 P.2d at 216, *quoting from State ex rel. Humble Oil & Refining Co. v. Wahner*, 25 Wis.2d 1, 130 N.W.2d 304, 311 (1964).

In *Fasano v. Board of County Com'rs*, 264 Or. 574, 507 P.2d 23 (1973), the Oregon Supreme Court, dealing with a statutory land use regulation scheme similar to Idaho's, observed the following with respect to the relationship between the comprehensive plan and the zoning ordinances enacted in accordance therewith:

"Although we are aware of the analytical distinction between zoning and planning, it is clear that under our statutes the plan adopted by the planning commission and the zoning ordinances enacted by the county governing body are closely related; both are intended to be parts of a single integrated procedure for land use control. The plan embodies policy determinations and guiding principles; the zoning ordinances provide the detailed means of giving effect to those principles." 507 P.2d at 27.

Accordingly, it is the decision of this Court that the Ada County Comprehensive Plan of 1968, in effect at the time appellants made application for rezone, is to be applied on remand to respondent Board.

The judgment of the district court is reversed and the case is remanded to the district court with order to remand to the Board of County Commissioners for further proceedings in accordance with I.C. §§ 67–6501 et seq. and this opinion.

SHEPARD, McFADDEN and BISTLINE, JJ., concur.

BAKES, Justice, concurring in part:

In view of the majority's amplification of the Court's original opinion, resulting from the filing of the joint petition for rehearing, I deem it necessary to explain why I originally concurred only in the result reached by the majority in its reversal of the judgment of the trial court. A brief review of the pleadings is necessary.

Cooper and Edmonds requested a rezone from D–2 to R–5 of a 99 acre tract of property on which they had obtained an option to purchase. The requested rezoning could only be accomplished by an ordinance passed by the Board of Ada County Commissioners. *Harrell v. City of Lewiston*, 95 Idaho 243, 506 P.2d 470 (1973). The Board held a hearing and by an order dated May 8, 1975, denied the application for a rezone and refused to enact an ordinance rezoning the property.

Cooper and Edmonds filed a notice of appeal in the district court of the Fourth Judicial District on May 20, 1975, in which they alleged that the action of the board was defective in several respects, including the fact that the action of the board was not sustained by the facts in the record; that the decision of the board was arbitrary and capricious and an abuse of discretion; and that the procedure followed by the board was defective and denied the appellants due process.

On May 28, 1975, the appellants filed an amended notice of appeal adding as an additional ground that "[appellants] are entitled to a writ of mandamus ordering the said [board] to issue an order of the rezone sought by [appellants]."

On July 17, 1975, the attorney for the appellants and the Ada County prosecuting attorney entered into a stipulation providing that "Plaintiffs may amend their pleadings in this matter in order to fully plead any and all rights to which they may be legally entitled." Pursuant to the stipulation of July 17, the appellants filed a document entitled "First Amended Complaint," which set out two causes of action, the first alleging that the denial of the rezone request by the defendants was unreasonable, arbitrary, unnecessary and capricious and without legal basis, and further alleging that "plaintiffs are entitled to a Writ of Mandamus because of the arbitrary and capricious actions of the Defendants . . ." The second cause of action incorporated the first and merely added the allegation that plaintiffs "have expended large sums of money in detrimental reliance upon the R–5

zone classification and the Ada County Comprehensive Plan and have a vested right to the rezone sought by the Plaintiffs herein."

The Ada County prosecuting attorney filed an answer to the plaintiffs' complaint denying appropriate allegations and asserting as an affirmative defense that "defendants further allege as an affirmative defense that the defendants were and are acting fully within their discretionary powers and mandatory duties as Commissioners of Ada County, and for this reason the complaint should be dismissed as a matter of fact and law."

The plaintiff appellants filed a motion for summary judgment which was denied by the district court below in a memorandum opinion in which he drew certain conclusions concerning the nature of the appeal which was pending before him. In my view this case turns upon the decision which the district court made at that time.

The district court, in its decision below, quickly and correctly disposed of the plaintiffs' claim for a writ of mandate. The court pointed out that a petition for writ of mandate would not lie against the Board in a petition for a rezoning request because in acting on such a petition, the Board is required to exercise its discretion rather than merely to perform a ministerial act. In that regard the district court correctly anticipated the decision of this Court in *Wyckoff v. Board of County Commissioners of Ada County,* 101 Idaho 12, 14, 607 P.2d 1066, 1068 (1980), in which this Court stated:

"A Writ of Mandate will lie to require administrative action in zoning matters only when the party seeking the writ 'has a clear legal right to have an act performed, [the] officer against whom the writ is sought has a clear duty to act, and [the] act be ministerial and not require the exercise of discretion. *Saviers v. Richey,* 96 Idaho 413, 415, 529 P.2d 1285, 1287 (1974); I.C. § 7–302.' "

In the *Wyckoff* case we held that a decision regarding the issuance of a zoning certificate is committed to the discretion of the

board. Thus it is clear that the district court correctly disposed of the claim of the plaintiffs that mandamus would lie to compel the action which they sought.

After disposing of the mandamus isse, the district judge then concluded that on an appeal from the decision of the board of commissioners of Ada County he was "in effect bound to rehear the validity of zoning disputes de novo," relying on the decision of this Court in *Cole-Collister Fire Protection District v. City of Boise*, 93 Idaho 558, 468 P.2d 290 (1970). Since in my view the disposition of this case turns entirely upon the correctness of that decision by the district court, a review of the appropriate statutes at this point is necessary.

At the time that the Board of County Commissioners of Ada County rendered its decision, the only apparent statutory authority for appeal from a decision of the Board of County Commissioners in zoning matters was contained in I.C. § 31–1509. *See Application of Bennion*, 97 Idaho 764, 554 P.2d 942 (1976). Upon the filing of such an appeal I.C. § 31–1512 provides that "the matter must be heard anew" by the district court. In *Gardner v. Blaine County*, 15 Idaho 698, 99 P. 826 (1909), the Court discussed the nature of a proceeding in the district court upon appeal from a board of county commissioners under I.C. §§ 31–1509 and –1512. The Court held that:

"What is meant by 'heard anew,' as used in this statute, is that the district court shall try the case as though originally brought in said court, and the case must be proven in the same way as before the board of commissioners. The affirmative and burden of proof is with the same party. It is a retrial of the case tried before the board of county commissioners.

"In the case under consideration, the trial court seems to have proceeded upon the theory that it was the duty of the appellant to disprove the judgment and order made by the board of county commissioners. In other words, the negative of the issue before the board became the affirmative when the case was appealed to the district court, and the appellant was placed in the position of being required to disprove the facts which the petitioners were required to prove before the board in order to authorize the board to make the order entered by them. Such is not the law, however, and when the case reached the district court upon the appeal from the order of the board, it was necessary for the petitioners to make their case there and prove the same facts they were required to prove before the board of commissioners; . . . ." 15 Idaho at 702–03, 99 P. at 827.

The district court's decision that he had to try the matter *de novo*, or anew, was correct. Since the appeal to the district court was to be a trial *de novo*, most of what this Court has said in its original opinion in this case concerning procedural safeguards required in proceedings before zoning boards and county commissions was not really necessary. When the matter was appealed and heard anew by the district court all of the proceedings that had occurred before the zoning commission or the Board prior to that time were of no significance. Under the statute it was as if the slate were wiped clean, and the case proceeds in the district court "as though originally brought in said court . . . ." *Gardner v. Blaine County, supra* at 702, 99 P. at 827. Any procedural irregularities which may have occurred before the Board of County Commissioners, if they were not repeated in the district court, would be irrelevant. *See Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976) (criminal conviction without benefit of a jury trial does not violate fourteenth amendment due process right to jury trial where accused has a right to "appeal" and have a trial *de novo* before a jury). Appellants do not allege, and there is nothing in the record to suggest, that there was any procedural deficiency in the proceedings before the district court. Thus, the only question before this Court is whether the district court properly tried the case *de novo*, or anew, rather than merely determining whether the Board of County Commissioners had "abused their discretion."

If the statute had required an "abuse of discretion" standard for judicial review, I would unhesitatingly affirm the decision of the district court. There is ample evidence in the record to sustain the Board of County Commissioners' decision. However, while the district court did make some *de novo* findings, particularly with regard to the overcrowding in the Lake Hazel School and the adverse impact which the rezoning request would have had upon that school, taking its decision as a whole, it appears as though the district court was in fact conducting an appellate type review. The court should have been making its own judgment of the facts and the law, unfettered by the opinion of the zoning board and the Board of County Commissioners below. In that regard the trial judge was not making his decision "as though originally brought in [the district] court," based upon the facts proved at trial, but was evaluating the evidence to see whether or not the Board of County Commissioners below had "abused their discretion" in ruling as they did. It was for that reason that I originally concurred only in the result reached by the majority that the judgment of the district court must be reversed. However, I do not concur in the majority's order that the matter be remanded to the county zoning authorities. I would merely reverse and remand to the district court for a true *de novo* decision, after first permitting the parties to submit any additional evidence which they might have bearing upon the issues.

I am not unmindful of the difficult and undesirable burden which this places upon the district judges of this state. Questions of zoning and rezoning raise policy questions which are more appropriately made by the zoning boards and commissions rather than the courts. However, the legislature, at the time that this case arose, had not seen fit to expressly address the question of judicial review by the courts of decisions in zoning matters. But for the general provisions in I.C. §§ 31–1509 to –1512, *Application of Bennion*, 97 Idaho 764, 554 P.2d 942 (1976), there would appear to be no review by the courts of zoning decisions at all,

except by the use of mandamus which is available only where the action requested is merely a ministerial duty. *Wyckoff v. Board of County Commissioners of Ada County*, 101 Idaho 12, 607 P.2d 1066 (1980). In the absence of any other legislative basis for review of zoning matters by the district courts, I.C. § 31–1512 requires that "the matter must be heard anew" which means that the district court must try the case *de novo* as though originally brought in that court.

Therefore, I join in the majority's reversal of the decision of the district court, but would merely remand the matter to the district court for a *de novo* trial under I.C. § 31–1512.